

MARIYAM HUSSAIN  *SENATOR COUNSEL*
d 773.666.4316  m 464.646.0694  mhussain@bm.net

May 20, 2025

**Via ECF**
Hon. Judge Philip M. Halpern
U.S. District Judge
U.S. District Court for the Southern District of New York
300 Quarropas St.
White Plains, NY 10601

**Re: Chun-Ko Chang v. Shen Yun Performing Arts, Inc., et al., No. 24-cv-8980-PMH (S.D.N.Y.)**

Dear Judge Halpern,

We write in response to the International Bank of Chicago's ("Bank") letter requesting unredacted copies of the information John Doe filed under seal and *ex parte*. Mr. Doe filed his motion to proceed under a pseudonym and to submit certain materials *ex parte* because of his legitimate and substantiated fear that Defendants will retaliate against him if he is identified by them. *See* Dkts. 70, 71. The Bank's request to unmask Mr. Doe so that it can oppose his request to proceed under a pseudonym would defeat the point of Mr. Doe's motion—with his identity unmasked to Defendants, he will be at serious risk of the very retaliation he is trying to protect himself against by proceeding under a pseudonym.

Contrary to the Bank's letter, Mr. Doe's counsel did communicate with the Bank's counsel about both Mr. Doe's request to proceed under a pseudonym and his request to file identifying information under seal prior to the filing of the motions. The Bank categorically opposed the requests because (in its view) there was not "any basis" to proceed under a pseudonym against the Bank and "no evidence has been presented that [Mr. Doe] is at any risk of harm or harassment." Ex. A (email from the Bank's counsel dated May 8, 2025). The SAC outlines the basis for Mr. Doe's concerns about the risk of harm and harassment. *See* Dkt. 68 ¶¶ 470–71. The redacted and *ex parte* filings supplement the SAC with more information about Mr. Doe. *See generally* Dkts. 70, 71.

On the merits, the Bank's request should be denied. The reasons for the sealing and *ex parte* requests are compelling: the risk of retaliation and harassment by Defendants is high—one of the Plaintiffs has already been subject to a campaign of



retaliation by Defendants, including being sued *twice* in Taiwan following her decision to file this action—and Mr. Doe's motion describes how he is particularly vulnerable to retaliation. *See* Dkt. 68 ¶¶ 376–81; *see generally* Dkt. 71.

This extends to the Bank. There is a high risk that the Bank will disclose Mr. Doe's identity to the Shen Yun Defendants, given the extreme loyalty displayed by the Bank, its founders, and its key executives to the Shen Yun Defendants, especially Defendants Hongzhi Li and Rui Li. As the SAC alleges, the Bank was founded by Maria Yu Tai and her husband Warren Tai, who continue to hold senior positions there. Dkt. 68 ¶¶ 277, 279. The Tais are so close with the Lis that the Lis' daughter has lived in properties owned by the Tais. *Id.* ¶ 278. The Tais have also given large plots of land to Dragon Springs Buddhist Inc., one of the Shen Yun Defendants, *for free*. *Id.* ¶ 281. Maria Tai's accounting firms have also served as that defendant's auditors and have repeatedly given it clean audit opinions. *Id.* ¶ 283. Warren Tai has served as the head of a media company that has promoted Shen Yun. *Id.* ¶ 282.

This loyalty extends to the Bank as an institution. For example, the SAC alleges that the Bank went out of its way to open a branch in Port Jervis, New York—its only branch outside of Illinois—for the express purpose of servicing the Shen Yun Defendants. *Id.* ¶ 253-54. The property that became that branch was purchased by Maria Tai. *Id.* ¶ 254. As another example, the Bank has gone to extraordinary lengths to service the Shen Yun Defendants, including by bringing duffel bags full of cash to Dragon Springs to allow for withdrawals during the COVID-19 pandemic. *Id.* ¶ 265. As another example, the Bank permitted the Shen Yun Defendants' bookkeeper, Qing "Judy" Siu, who was also a top aide to the Lis, to act as the adult custodian for countless underage dancers and musicians, even if Ms. Sui wasn't present, as required. *Id.* ¶¶ 260-62. As a final example, David Cui, the Bank's recent "head of business development . . . had a romantic relationship with the[] daughter" of the Lis, and when "the relationship ended, the Lis paired Cui with one of the Shen Yun dancers, and they subsequently married. *Id.* ¶ 280.

Put simply, "[t]he Bank, its founders, and its employees are . . . deeply entangled both professionally and personally with the Shen Yun Defendants[,]" *id.* ¶ 284, with "[t]he Bank serv[ing] as [the Shen Yun Defendants'] financial arm[.]" *Id.* ¶ 255. As such, disclosing Mr. Doe's identity to the Bank is tantamount to disclosing it to the Shen Yun Defendants.

Meanwhile, the only reason the Bank asks for disclosure is to oppose Mr. Doe's request to submit information under seal and *ex parte*. Notably, the Bank does not argue that it needs Mr. Doe's identity to challenge the substantive claims asserted by Mr. Doe in the Second Amended Complaint. Nor could it, given that Mr. Doe has alleged all the facts relied on to support his claims publicly. Disclosing his identity to the Bank at this stage would therefore serve no real purpose other than to put him at substantial risk.



       As for Mr. Doe's *ex parte* submission, as well as the portions of his brief reflecting information contained in that submission that have been redacted, Mr. Doe respectfully requests that, to the extent Your Honor is inclined to require their disclosure to the Bank, the Bank's counsel, or anyone else, Mr. Doe be given an opportunity to modify or withdraw his motions so as to avoid such disclosure. That is because Mr. Doe may well prefer to proceed under his real name, or to withdraw from this litigation, instead of disclosing the information contained in that *ex parte* submission.

       Respectfully submitted,

       Mariyam Hussain