

**MARIYAM HUSSAIN** / *SENIOR COUNSEL*
d 773.666.4316  m 464.646.0694 | mhussain@bm.net

June 6, 2025

Hon. Philip M. Halpern
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: *Chang v. Shen Yun Performing Arts, Inc., et al.*, Civ. No. 7:24-cv-08980 (S.D.N.Y.)

Dear Judge Halpern:

    The Second Amended Complaint ("SAC") alleges that the Shen Yun Defendants ("SY Defendants") (1) brought children to a secretive compound where they exercised control over every aspect of their lives to coerce them to perform as dancers and musicians ("Performers"); (2) threatened Performers with serious harm if they failed to obey; and (3) did not pay or drastically underpaid Performers—all to generate hundreds of millions of dollars for the SY Defendants. *See* Dkt. 68 ¶ 155, ¶¶ 116-244. These facts, which are the subject of state and federal civil and criminal investigations, *Id.* ¶¶ 4, 24, are more than sufficient to state plausible claims under the Trafficking Victims Protection Act ("TVPA") and the New York Labor Law ("NYLL").

    The SY Defendants exercised total control over Performers: restricting their physical movement, including keeping them in a guarded compound and confiscating their passports, *id.* ¶¶ 161-73; restricting and controlling contact with the outside world, including their families, *id.* ¶¶ 174-89; forcing them to engage in criminal activity, such as smuggling money across borders, *id.* ¶¶ 169-170; and dominating every aspect of their lives such as: what they eat, their romantic and family lives, access to their finances, and even whether they receive medical care, *id.* ¶¶ 190-208, 216-230. The SY Defendants threatened Performers with serious harm if they disobeyed, including being forced to pay hundreds of thousands of dollars in "scholarships," "mass criticism" sessions

reminiscent of Communist China, social ostracism, and destruction of their reputations, and threats of physical harm. *Id.* ¶¶ 147-49, 158-59; 209-25, 231-39, 243-44. While the four Plaintiffs have now escaped, they remain subject to these threats. Indeed, the SY Defendants have subjected Plaintiff Chang to financial, reputational, and psychological harm, including by directing others to file "meritless defamation lawsuits" against her. *Id.* ¶¶ 369-81, 470(a)-(f), 507.

The SY Defendants' letter (ECF 84)—a 5-page letter with 23 footnotes, despite this Court's rule discouraging footnotes—falls flat. A few arguments can be quickly cast aside. The SAC does not rely on group pleading. It provides each defendant with "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Han v. InterExchange, Inc.*, 2024 WL 3990770, at *11 (S.D.N.Y. 2024) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 33 (2d Cir. 2001)). Hongzhi Li and Rui Li masterminded the trafficking, forced labor, and wage theft scheme. Shen Yun Performing Arts Inc. and the Fei Tian Schools are run by the Lis as a pretext to lure minors into the scheme. Dragon Springs Buddhist Inc. is the guarded compound that houses the Performers. Shujia Gong is an enforcer who targets Performers who step out of line, like Plaintiffs. Dkt. 68 ¶¶ 43, 44, 67–86. The SAC also includes over 30 pages of allegations detailing Plaintiffs' specific claims and injuries. *Id.* ¶¶ 46, 305-507. Plaintiffs are suffering current and recurring injuries, and so an injunction barring the SY Defendants from continuing to violate the TVPA will remedy those injuries. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998).

**The SAC sufficiently alleges serious harm under the TVPA.** The SY Defendants contend that Plaintiffs describe nothing more than a boarding school experience that Plaintiffs could leave at will. But "[t]he TVPA does not require that plaintiffs be kept under literal lock and key," and so "it is of no consequence" if a plaintiff can leave in certain, quite limited circumstances, as the law was enacted to "reach cases in which persons are held in a condition of servitude through

2

nonviolent coercion." *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014). As laid out above, the SY Defendants' threats are sufficiently serious to state a claim under the TVPA. *See, e.g.*, *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 707 (S.D.N.Y. 2022); *Schneider v. OSG, LLC*, No. 22-CV-7686, 2024 WL 1308690, at *7 (E.D.N.Y. Mar. 27, 2024).

**The ministerial exception does not apply.** This is a "fact specific" affirmative defense for which the defendants bear the burden, such that "resolution on a motion to dismiss [is] inappropriate." *Califano v. Roman Cath. Diocese of Rockville Ctr., New York*, 751 F. Supp. 3d 42, 48, 50-53 (E.D.N.Y. 2024). In any event, this doctrine doesn't allow a commercial performance company to engage in human trafficking, especially of minors. *First*, "beliefs must be sincerely held and religious in nature to be accorded first amendment protection," *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984), not "self-serving" claims of religiosity. *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023). Plaintiffs' complaint includes numerous, specific allegations that the SY Defendants are neither religious in character nor sincere in their claims to be religious—including allegations that the SY Defendants only claim to be religious when it suits them and operate for personal gain. *See, e.g.*, Dkt. 68 ¶¶ 47, 87-103; *Susu Wei v. Holder*, 314 F. App'x 404, 405 (2d Cir. 2009) (Falun Gong adherents "vehemently deny" that it is a religion); *Int'l Soc. For Krishna Consciousness v. Barber*, 650 F.2d 430, 442 (2d Cir. 1981) (directing funds to "personal gain" is evidence of insincerity). And "sincerity" is particularly inappropriate for resolution on a motion to dismiss. *See Patrick*, 745 F.2d at 159. *Second*, the ministerial exception doesn't apply to Plaintiffs' claims. The Supreme Court has only held that it applies to an "employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her." *Hosanna-Tabor v. E.E.O.C.*, 565 U.S. 171, 196 (2012). This doctrine doesn't extend to minors who were coerced into employment. The Second Circuit had "little difficulty" rejecting an attempt to extend the

3

ministerial exception to the TVPA's prohibition on trafficking minors. *U.S. v. Thompson*, 896 F.3d 155, 166 (2d Cir. 2018). *Third*, Performers don't occupy the "key roles" to which the ministerial exception applies: certain faith leaders, teachers, guides, and similar positions. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). Performers had no religious titles and weren't held out as performing religious roles; performances weren't religious in character; Performers were subject to total discipline and control; and the SY Defendants routinely hired non-religious performers to play the same roles. *See, e.g.*, Dkt. 68 ¶¶ 63-66, 74-75, 91-103, 304-507.

**The Religious Freedom Restoration Act ("RFRA") doesn't apply.** The Second Circuit's most recent decision was skeptical RFRA applies in suits between private parties. *Rweyemamu v. Cote*, 520 F.3d 198, 203 & n.2 (2d Cir. 2008), *abrogated on other grounds Jusino v. Fed'n of Cath. Tchrs.*, 54 F.4th 95, 104 (2d Cir. 2022). RFRA also wouldn't shield the SY Defendants—they haven't met their burden as to sincerity, religiosity, or that prohibiting trafficking substantially burdens their religious exercise. 42 U.S.C. § 2000bb-1(a); *Newdow v. Peterson*, 753 F.3d 105, 108 (2d Cir. 2014). And the TVPA's prohibition on human trafficking is the least restrictive means of furthering the compelling interest of prohibiting human trafficking. 42 U.S.C. § 2000bb-1(b).

**Conspiracy and/or attempt to benefit under § 1595 were actionable during the relevant time.** Congress stated that the pre-2023 amendment was merely a "technical and clarifying update," not a substantive change that increased a party's liability. *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, 136 Stat. 6199 (2023). The civil remedy has always reached attempting or conspiring to benefit from trafficking.

**Plaintiffs are employees, the SY Defendants are employers, and no exceptions apply under the NYLL.** The SAC alleges facts showing that the SY Defendants were employers and

4

Plaintiffs were employees. *See, e.g.*, Dkt. 68 ¶¶ 134-139, 145, 285-303, 311, 320, 323-329, 367, 384-385, 404-408, 426, 434, 453-456, 494-495. No NYLL exceptions apply. The SY Defendants are not "organized and operated exclusively for religious, charitable or educational purposes," NYLL § 651(5)(e), (h). *See, e.g.,* Dkt. 68 ¶¶ 47, 87–103. Nor is a commercial performance company a "religious order." NYLL § 651(f). The argument that the NYLL violates the Free Exercise Clause is raised in a footnote and forfeited, and it fails since, among other things, Defendants are neither sincere nor religious and the NYLL is neutral and generally applicable.

**The NYLL may be applied extraterritoriality, and the SAC relates back.** The SY Defendants' blanket assertion that the NYLL does not apply to out of state work is wrong. *See Solouk v. Eur. Copper Specialties, Inc.*, No. 14CV8954 (DF), 2019 WL 2181910, at *16 (S.D.N.Y. May 2, 2019). Also, the SAC relates back to the first filed complaint, and thus the relevant statute of limitations for the NYLL claims begin on November 25, 2018. Fed. R. Civ. P. 15(c)(1)(B)).

**The SAC adequately alleges a retaliation claim.** The Taiwanese defamation lawsuits were brought over statements critical of the SY Defendants by plaintiffs who weren't the targets of those statements. This is sufficient to allege objective baselessness. *E.g., Gill v. Giuliani*, No. 23-CV-4087 (DLC), 2024 WL 4858992, at *3 (S.D.N.Y. Nov. 21, 2024) ("[P]laintiff cannot sustain a defamation claim if the statement is not 'of and concerning plaintiff.'").

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' request.

Sincerely,

*[signature]*

Mariyam Hussain
Counsel for Plaintiffs

Cc: All counsel on record (via ECF)