UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUN-KO CHANG, YI RAN WANG, GUANEE XIE, and HOFMANN ZHU, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br>  v.<br><br>SHEN YUN PERFORMING ARTS, INC., FEI TIAN COLLEGE, FEI TIAN ACADEMY OF THE ARTS, DRAGON SPRINGS BUDDHIST INC., INTERNATIONAL BANK OF CHICAGO, SHUJIA GONG a/k/a TIANLIANG ZHANG, HONGZHI LI, and RUI LI a/k/a SANDY REBECCA LEE,<br><br>     Defendants. | Index No.: 24-cv-8980 (PMH) |

**DEFENDANT INTERNATIONAL BANK OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

{1805464.1 }

TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. PLAINTIFFS' ALLEGATIONS .............................................................................................. 2

III. STANDARD OF REVIEW ...................................................................................................... 4

IV. ARGUMENT ............................................................................................................................ 5

    A. Plaintiffs Do Not Allege Viable TVPRA Claims Against IBC ......................................... 5

        i. IBC Did Not Participate In a Forced Labor Venture. ................................................ 5

        ii. IBC Did Not Knowingly Benefit from Forced Labor ................................................ 7

        iii. IBC Did Not Know of or Recklessly Disregard the Facts of Any Alleged Forced Labor ........................................................................................................................... 8

        iv. IBC Did Not Engage in any Conspiracy in Violation of the TVPRA ...................... 11

V. CONCLUSION ...................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**                                                  **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 2, 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 2, 4, 10, 11

*Chen v. Cai*,
   No. 19-CV-05387 (PMH), 2022 WL 917575 (S.D.N.Y. Mar. 28, 2022) .............................. 4, 7

*Doe 1 v. Apple Inc.*,
   96 F.4th 403 (D.C. Cir. 2024) ............................................................................................... 7

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023)………11

*Edmondson v. Raniere*,
   No. 20-cv-485, 2024 WL 4334374 (E.D.N.Y. 2024) ............................................................ 11

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................................................... 8

*Levin v. Sarah Lawrence Coll.*,
   No. 23-cv-10236, 2024 WL 4026966 (S.D.N.Y. Sept. 3, 2024) ............................................. 8

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................................... 7

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ....................................................................... 5, 10, 11

**STATUTES**

18 U.S.C. § 1589(a) ............................................................................................................... 5

18 U.S.C. § 1589(b) ........................................................................................................... 1, 5

18 U.S.C. §§ 1590(a) and 1595(a) ......................................................................................... 5

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1, 4

Defendant International Bank of Chicago ("IBC"), respectfully submits this memorandum of law seeking leave to dismiss Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 91), under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

## I. PRELIMINARY STATEMENT

Plaintiffs seek to hold IBC responsible for the alleged mistreatment they suffered when they lived on the campus of Defendant Dragon Springs Buddhist Inc. ("Dragon Springs"), attended Defendant Fei Tian Academy of the Arts ("Fei Tian Academy") and Defendant Fei Tian College ("Fei Tian College") (collectively, the "Fei Tian Schools"), received training as elite dancers and musicians and practiced and performed with the touring dance and music company operated by Defendant Shen Yun Performing Arts, Inc. ("Shen Yun"), all supposedly under the control of Falun Gong leader Defendant Hongzhi Li and his wife Rui Li (collectively, the "Shen Yun Defendants"). In the SAC, Plaintiffs do not allege that IBC, which provided banking services to some students at the Fei Tian Schools, had anything directly to do with the Shen Yun Defendants' alleged acts of coercion or control in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589(b). SAC ¶¶ 147-245; 304-507. Instead, Plaintiffs' claims against IBC are limited to "beneficiary liability" rather than any intentional affirmative participation in a forced labor venture [*id.*, Count Two, ¶¶ 535-546], and a conspiracy to knowingly benefit from the alleged forced labor. *Id.*, Count Four, ¶¶ 552-558. Here, Plaintiffs' TVPRA claims against IBC rely almost exclusively on unsupported and conclusory allegations based on IBC's alleged close "association" with the Shen Yun Defendants. However, general association is insufficient to support a TVPRA claim. What is missing here are the factual allegations showing that IBC participated in and benefited from a venture with the requisite scienter.

Despite these glaring deficiencies, the SAC continues to allege, like Plaintiffs' prior pleadings, that IBC knowingly benefited from its participation in the Shen Yun Defendants' alleged forced labor venture. But like its two predecessors, the SAC fails to include any non-

conclusory, plausible allegations against IBC sufficient to satisfy the requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For these reasons, and others described below, Plaintiffs' SAC against IBC should be dismissed in its entirety with prejudice.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs' entire case rests on an alleged forced labor scheme perpetrated by the Shen Yun Defendants and particularly, the "Shen Yun commercial enterprise" led by Hongzhi Li and Rui Li. SAC, ¶ 75. According to Plaintiffs, the core of Shen Yun's commercial enterprise is its forced labor scheme requiring "uncompensated or undercompensated labor" by student performers. *Id.*, ¶ 9. Despite acknowledging the not-for-profit status of Shen Yun [*id.*, ¶ 34], Fei Tian Academy [*id.*, ¶ 35], Fei Tian College [*id.*, ¶ 36] and Dragon Springs [*id.*, ¶ 37] (the "Shen Yun Entity Defendants"), Plaintiffs allege that these entities actually serve as "alter egos" of the Lis [*id.*, ¶ 40], and that Shen Yun operates as a for-profit commercial enterprise with a political agenda. *Id.* at ¶¶ 51; 87-88; 99-101. Plaintiffs deny that the Falun Gong is a religion—*id.*, ¶¶ 3; 93; 95; 103—purportedly to preempt any argument by the Shen Yun Defendants that Plaintiffs' claims are barred by the First Amendment's Free Exercise Clause and the Ministerial Exception.[1] If Plaintiffs' TVPRA claims against the Shen Yun Defendants are barred, then Plaintiffs' derivative claims against IBC must also fail. However, even if Plaintiffs' claims against the Shen Yun Defendants are not barred, Plaintiffs' claims against IBC should be dismissed in their entirety. Most of Plaintiffs' allegations against IBC are based on sheer speculation rather than supported factual development and do not demonstrate more than the mere possibility of misconduct attributable to IBC that might afford Plaintiffs an entitlement to relief. This is

---

[1] Based on the issues raised in their pre-motion letter to the Court [ECF 84], the Shen Yun Defendants are expected to argue that Plaintiffs' claims under the TVPRA and New York Labor Law are barred by the First Amendment's Free Exercise Clause and the Ministerial Exception due to the fact that Shen Yun is the "dance-performance ministry of Falun Dafa (Falun Gong), a religion." *Id.* The Shen Yun Defendants have already made similar arguments in their recently filed motion to dismiss the complaint in *Zan Sun and Qing Ling Cheng v. Shen Yun Performing Arts, Inc., et al.*, No. 7:25-cv-03185 (S.D.N.Y. July 7, 2025) [ECF 30-1].

obvious in the way Plaintiffs repeatedly rely on unsupported conclusions and immaterial facts to draw inferences concerning IBC's alleged association with the Shen Yun Defendants and motive for "turning a blind eye" to their "obvious" misconduct to support Plaintiffs' TVPRA claims. SAC, ¶23.  For example, Plaintiffs allege that IBC served as the Shen Yun Defendants' "financial institution" [*id.*, ¶ 23], and was the "financial arm" supporting the forced labor venture. *Id.*, ¶ 255.  However, Plaintiffs do not provide any factual support demonstrating that IBC performed *any* banking services for the Shen Yun Defendants directly or otherwise received any other "competitive edge" or benefit from them or any associated entity by participating in the alleged venture. *Id.*, ¶¶ 255; 266(b) and (c). Nor does the SAC provide any factual development to substantiate Plaintiffs' allegations that IBC acted at the Shen Yun Defendants' directives. *Id.,* ¶ 256.

  Plaintiffs also fail to plausibly explain how the banking services that IBC offered to certain students at the Fei Tian Schools provided an "imprimatur of legitimacy" to better conceal the Shen Yun Defendants' forced labor scheme. *Id.*, ¶¶ 255, 267. The SAC alleges that IBC established bank accounts for minor students—many of whom were from foreign countries— with the required forms of identification and a required guardian or custodian. *Id.*, ¶¶ 224-226; 260-261. However, without any supporting facts, the SAC attempts to plead that these accounts—which were allegedly structured with low limits and other guardrails common in accounts for young children—were deliberately restrictive to enable the Shen Yun Defendants to exert control over the students' finances to prevent them from leaving Dragon Springs. *See id.*, ¶¶ 264-265. Here, no plausible facts are pleaded to sustain Plaintiffs' conclusion that IBC opened and managed these student accounts for any illegitimate purpose, much less to further the Shen Yun Defendants' forced labor scheme.  Plaintiffs' additional conclusory allegations that IBC was eager to "ingratiate" itself with Hongzhi Li and other lucrative businesses associated with the Shen Yun Defendants also fails to plausibly plead a TVPRA claim. *Id.*, ¶ 266.  Finally, the SAC lacks well-pled allegations that IBC "knew or should have known" that Plaintiffs' labor was

forced and coerced. Plaintiffs provide no basis for their conclusory allegations that IBC representatives witnessed TVPRA violations or had any reason to know that Plaintiffs and other students were victims of forced labor. For example, the SAC alleges, without factual support, that unidentified IBC representatives personally witnessed how "young and vulnerable" the students were, how their weight was "controlled and restricted" by the Shen Yun Defendants, how many hours they worked, and how they were underpaid. *Id.*, ¶ 268. Additionally, there is no allegation that any representative of IBC observed Plaintiffs or other class members perform uncompensated labor or knew that Plaintiffs' labor was being coerced. Nor do Plaintiffs allege that IBC had information regarding any of the alleged acts of coercion or control by the Shen Yun Defendants. *See id.*, ¶¶ 104-245. The SAC does not allege that IBC actually knew what the arrangement was between the Shen Yun Defendants and Plaintiffs or other Fei Tian students but nevertheless alleges that IBC ignored "red flags" of "meager payments" or other "restrictive conditions" and "suspicious activity." *Id.*, ¶¶ 259, 264, 270. Plaintiff's vague, conclusory and unsupported allegations regarding IBC's knowledge of forced labor and trafficking have no basis in fact and fail to state a claim.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is warranted if it fails to allege "sufficient factual matter" that, if "accepted as true, … state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (*quoting Twombly*, at 556). "The factual allegations pled 'must be enough to raise a right to relief above the speculative level ....'" *Chen v. Cai*, No. 19-CV-05387 (PMH), 2022 WL 917575, at *2 (S.D.N.Y. Mar. 28, 2022), *quoting Twombly*, 550 U.S. at 555. A complaint that merely offers "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not entitled to "the presumption of truth." *Iqbal*, 556 U.S. at 678, 681 (citations omitted). In the

SAC now before this Court, the conclusory nature of Plaintiffs' allegations has not "nudged" their TVPRA claims against IBC "across the line from conceivable to plausible" and should be dismissed. *Id.,* 556 U.S. at 680.

## IV.   ARGUMENT

### A.  Plaintiffs Do Not Allege Viable TVPRA Claims Against IBC

Plaintiffs allege that the Shen Yun Defendants (which do not include IBC), obtained the labor of Plaintiffs and other purported class members "through threats of serious harm, through a scheme to make Plaintiffs and the Classes believe they would suffer serious harm" [SAC, ¶ 527], in violation of the TVPRA, 18 U.S.C. § 1589(a) [*id.*, Count One, ¶¶ 524-534] and conspired to "knowingly recruit[], harbor[], and transport[] Plaintiff and other class members in violation of 18 U.S.C. §§ 1590(a) and 1595(a). *Id.,* Count Three, ¶ 549. As against IBC, Plaintiffs' allegations are not based on any intentional affirmative participation in a forced labor venture. Instead, Plaintiffs' claims against IBC require a predicate § 1589 (a) violation and are limited to "beneficiary liability" rather than any intentional affirmative participation in a forced labor venture [*id.*, Count Two, ¶¶ 535-546] and a conspiracy to knowingly benefit from the alleged forced labor. *Id.*, Count Four, ¶¶ 552-558. Liability under 18 U.S.C. § 1589(b), "requires that (1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020) (quotation omitted). Here, Plaintiffs' TVPRA claims against IBC rely almost exclusively on unsupported and conclusory allegations without factual support. What is missing here and fatal to Plaintiffs' claims are the factual allegations showing that IBC participated in and benefited from a venture with the requisite scienter.

### i.   IBC Did Not Participate In a Forced Labor Venture.

First, the SAC fails to adequately allege that IBC participated in a forced labor venture for purposes of the TVPRA.  Plaintiffs do not allege that IBC and the Shen Yun Defendants were

engaged in any commercial venture. Nor do Plaintiffs provide any factual support for their conclusory allegations that IBC served as the "financial arm of the Shen Yun Defendants' performing arts venture" [SAC, ¶ 255], or provided any banking services to the Shen Yun Defendants. *Id.*, ¶ 266 (c). For example, the SAC does not allege that the Shen Yun Defendants held any payroll, operating or other business accounts with IBC to substantiate the unsupported claim that IBC obtained any banking business directly from the Shen Yun Defendants [*id*., ¶ 266 (c)], much less banking in furtherance of any forced labor scheme. At most, the facts in the SAC support a commercial relationship between IBC and Plaintiffs (as well as other Fei Tian students), not the Shen Yun Defendants. As alleged in the SAC, IBC set up bank accounts for minor students with an adult custodian who performed bookkeeping services for the Shen Yun Defendants. *Id.*, ¶ 261. There was nothing unlawful or suspicious about the way these accounts were set up, especially given the fact that these were primarily for minor foreign students. *Id.* Moreover, the SAC does not allege any facts to support Plaintiffs' conclusory allegation that the custodian who opened these accounts on behalf of minor foreign students provided the Shen Yun Defendants with access to exercise power and control over these accounts in furtherance of any forced labor scheme. *Id.*, ¶¶ 262-264. Nor does the SAC provide any explanation concerning how setting up these accounts with low limits or other common guardrails typical for bank accounts involving minor children was unusual or should have otherwise raised a "red flag" for IBC. *Id.*, ¶ 264. Even if the Shen Yun Defendants did exert control over these student accounts, the SAC fails to explain how IBC knew or should have known that this was in furtherance of any forced labor scheme. As far as IBC (and the public at large) was aware, the Shen Yun Defendants consisted of nonprofit organizations that operated two boarding schools and a music and dance company that trained elite performers to share the ministry of Falun Gong. Shen Yun regularly performs hundreds of performances each year to audiences around the world, including performances at some of the most celebrated and recognized performance art venues. *Id.*, ¶ ¶ 58, 60. As more fully set forth below, the SAC does not plausibly allege how IBC knew or should

have known that the Shen Yun Defendants were engaged in an unlawful venture. Nor have Plaintiffs plausibly alleged that by lawfully opening and maintaining bank accounts for minor students, IBC participated in the alleged performing arts venture that used Plaintiffs' forced labor. Such activity does not constitute the type of participation contemplated by the TVPRA. *See Doe 1 v. Apple Inc*., 96 F.4th 403, 416 (D.C. Cir. 2024) (participation in an unlawful venture under the TVPRA requires something more than an ordinary commercial transaction); *see also, Chen*, 2022 WL 917575, at *5 n.4 (dismissing TVPRA claim where plaintiff failed to explain how defendants "participated" in a forced labor venture). Here, Plaintiffs allege that the Shen Yun Defendants were commercially motivated to "orchestrate[] the forced labor scheme to ensure the steady supply of cheap or uncompensated labor that makes [their] performances possible." SAC, ¶ 90. But the SAC does not sufficiently allege how IBC actively participated in such an enterprise, nor that they benefitted from or had any knowledge of such misconduct, warranting dismissal of Plaintiffs' TVPRA claims. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (to adequately plead "participation" liability, the complaint must contain factual allegations that defendant participated in acts that violated the TVPRA). Plaintiffs' allegations that individuals associated with IBC had close personal relationships with the Lis and the Shen Yun Defendants [SAC, ¶¶ 254; 284], also fails to establish their participation in a venture. *Noble,* F.Supp.3d at 524 (2018)(liability for participation in a venture "cannot be established by association alone").

        ii.    **IBC Did Not Knowingly Benefit from Forced Labor**

Next, Plaintiffs fail to plausibly plead that IBC "knowingly benefited" or received anything of value from the Shen Yun Defendants' cash holdings or the "tens of millions of dollars more generated each year" as a result of Plaintiffs' alleged forced labor. SAC, ¶ 247. Although the SAC alleges that IBC obtained valuable banking business "from the Shen Yun Defendants themselves," [*id.*, ¶ 266 (c)], it contains no further factual support that IBC directly benefited financially from any forced labor violation. Rather, Plaintiffs' allegations are far more

attenuated. Plaintiffs' allege that IBC benefited from Plaintiffs' forced labor because it provided IBC with (a) "an exclusive pipeline of accounts" from Plaintiffs and other student performers and (b) a competitive edge for other lucrative business. *Id*, ¶ 266 (a) – (b). However, Plaintiffs have not explained how IBC benefited from forced labor by providing banking services to Fei Tian students, nor have Plaintiffs identified "other lucrative business" that IBC allegedly obtained as a result of its participation in a forced labor scheme. Even accepting Plaintiffs' conclusory claims about alleged benefits to IBC, the SAC is deficient because Plaintiffs fail to show a causal relationship between IBC's alleged "facilitation" of forced labor and the benefits that IBC allegedly received. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (to satisfy the "benefit" prong of the TVPRA there must be a causal relationship between affirmative conduct furthering the TVPRA violation and receipt of a benefit with knowledge of that causal relationship). *See also Levin v. Sarah Lawrence Coll.*, No. 23-cv-10236, 2024 WL 4026966, at *24 (S.D.N.Y. Sept. 3, 2024) (granting motion to dismiss TVPRA claim where Complaint failed to plausibly plead that defendant benefitted from TVPRA violation). Here, the SAC does not sufficiently allege that IBC obtained new accounts or anything else of value from the Shen Yun Defendants because it actively participated in the forced labor venture. In the absence of this causal nexus, Plaintiffs have failed to plead that IBC benefitted from any forced labor scheme.

### iii. IBC Did Not Know of or Recklessly Disregard the Facts of Any Alleged Forced Labor

As regards to the "knowledge" element of the TVPRA, Plaintiffs' recitation of regulatory guidance and alleged "red flags" fails to give rise to any plausible inference that IBC knew about or recklessly disregarded any TVPRA violations. SAC ¶¶ 270 (a-j).

Plaintiffs primarily rely on a September 2014 Advisory published by the Financial Crimes Enforcement Network (FinCEN), which seeks to advise financial institutions on how to detect and report suspicious financial activity that may be related to human smuggling and/or

human trafficking.[2] In Appendix B, the Advisory contains examples of "Human Trafficking Red Flags" although it clearly states that "[n]o one transaction or red flag by itself is a clear indicator" and "financial institutions may consider applying red flags in combination with other factors, such as a customer's profile and expected transaction activity." *Id.* Despite Plaintiffs' allegation that "nearly all of the identified warnings signs were present in this case," [SAC, ¶ 270], Plaintiffs provide no basis for their conclusory allegations that IBC representatives witnessed TVPRA violations or had any reason to know that Plaintiffs and other students were victims of forced labor. For example, there is no allegation that any representative of IBC observed Plaintiffs or other class members perform uncompensated labor or knew that Plaintiffs' labor was being forced or coerced. Nor does Plaintiffs allege that IBC had any knowledge or information regarding any of the alleged acts of coercion or control by the Shen Yun Defendants alleged in ¶¶ 64-176 of the Complaint. For example, Plaintiffs allege that "[t]he Bank knew (or should have known) that the Shen Yun Defendants had hundreds of Performers and generated tens of millions of dollars in business revenue each year, and it knew (or should have known) that none of the student Performers were paid over $1,000 per month and some were paid nothing at all." SAC, ¶ 270 (a) and (c).  Similarly, Plaintiffs also allege that IBC "knew (or should have known) that Plaintiffs worked for low pay for long periods of time and often worked "six days per week and much longer than any normal business hours." *Id.*, ¶ 270 (b). Presumably, Plaintiffs would have this Court believe, without any supporting facts, that IBC knew of the commercial nature of the Shen Yun Defendants' venture *and* was also aware that Plaintiffs and other students enrolled at the Fei Tian Schools were not students and/or practitioners of the Falun Gong religion but rather employees of the Shen Yun Defendants forced to participate in an unlawful scheme. Yet Plaintiffs offer no clue as to how IBC had actual or constructive knowledge of any unlawful scheme or recklessly disregarded any relevant facts.

---

[2] See *id., citing* U.S. Department of the Treasury, Financial Crimes Enforcement Network, FinCEN Advisory FIN-2014-A008, Appendix B: Human Trafficking Red Flags, at 9 (Sept. 11, 2014), https://www.fincen.gov/sites/default/files/advisory/FIN-2014-A008.pdf.

Plaintiffs further allege that IBC "knew (or should have known)" of the alleged forced labor because "students could not travel on their own, generally could not leave the [Dragon Springs] compound, had their identification documents held by the Shen Yun Defendants, always had to be accompanied by a representative of the Shen Yun Defendants," had a common custodian and were "required" to open accounts at IBC. *Id.*, ¶ 270 (d) - (i). The SAC also fails to explain how IBC "knew or should have known" that Plaintiffs and other student bank account holders were "child performers" for whom trust accounts were not properly established. *Id.*, ¶¶ 271-272. Again, Plaintiffs do not identify the source of their information or otherwise offer any explanation concerning IBC's knowledge of the commercial nature of the alleged venture or Plaintiffs' "employment" relationship with the Shen Yun Defendants to establish actual or constructive knowledge.

Plaintiffs further allege that Bank employees and representatives "observed" that students "were often malnourished, injured, fatigued, and always confined to residing at the armed and guarded Dragon Springs compound." *Id.*, ¶ 270 (j). Plaintiffs once again offer nothing but bare conclusory allegations to suggest how IBC knew or should have known that that Plaintiffs or other students were exhibiting signs of human trafficking that IBC (or its representatives) failed to detect. *Id.*, ¶ 270(j). Plaintiffs' vague and conclusory allegations regarding IBC's alleged knowledge of forced labor and trafficking "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'" and fail to sufficiently state a claim under the TVPRA. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d at 154 (granting defendants' motion to dismiss a TVPRA claim where plaintiff failed to allege requisite knowledge of a specific TVPRA violation). Simply stating that IBC knew or should have known any facts on which Plaintiffs' TVPRA allegations are based is obviously insufficient. *Twombly* 550 U.S. at 555.

### iv. IBC Did Not Engage in any Conspiracy in Violation of the TVPRA

Similarly without merit is Plaintiffs' allegation that IBC "conspired" with the Shen Yun Defendants to knowingly benefit from their forced labor scheme (Count Four). Under the TVPRA, to state a claim for conspiracy, the complaint must contain sufficient allegations to support an inference that each defendant entered into an agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). An allegation of mere parallel conduct is not enough and "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* Here, the SAC contains no nonconclusory factual allegations that IBC entered an agreement with the Shen Yun Defendants to actually engage in a forced labor venture. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) (dismissing a conspiracy claim under the TVPRA in the absence of any facts supporting an actual agreement to engage in a sex-trafficking venture). The fact that IBC agreed to provide banking services to Fei Tian students does not mean it did so pursuant to any illegal agreement with the Shen Yun Defendants to participate in a forced labor venture. Without further factual enhancement, "an account of a defendant's commercial efforts stays in neutral territory." *Id.*

Moreover, as discussed above, Plaintiffs have failed to adequately plead that IBC had any knowledge of the Shen Yun Defendants' forced labor operations. The failure to plead such knowledge is fatal to Plaintiffs' conspiracy claims. *See Edmondson v. Raniere*, No. 20-cv-485, 2024 WL 4334374, at *33 (E.D.N.Y. 2024) (failure to adequately plead defendants' knowledge of any forced labor violations warrants dismissal of conspiracy claim).

### V. CONCLUSION

In sum, Plaintiffs' Second Amended Complaint is devoid of the factual allegations necessary to plausibly allege that IBC, with the requisite scienter, either participated in the alleged forced labor venture or received a financial benefit from that participation. Instead, Plaintiffs offer legal conclusions, unsupported recitations of the elements of causes of action, or sheer speculation and unreasonable inferences, none of which entitle them to the relief sought.

This is Plaintiffs' third attempt to repair the pleading defects yet Plaintiffs' allegations fall far short of the pleading standard set forth in *Twombly* and *Iqbal*, and fail to assert any violation of the TVPRA against IBC. Accordingly, IBC respectfully request that this motion to dismiss be granted in its entirety, with prejudice and that IBC be dismissed from this case.

Dated: New York, New York
      July 30, 2025

By: /s/ Felicia S. Ennis
Felicia S. Ennis
WARSHAW BURSTEIN, LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel: 212-984-7700
fennis@wbny.com

*Attorneys for Defendant International Bank of Chicago*