**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHUN-KO CHANG, YI RAN WANG, GUANEE XIE**, and **HOFMANN ZHU**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**SHEN YUN PERFORMING ARTS, INC., FEI TIAN COLLEGE, FEI TIAN ACADEMY OF THE ARTS, DRAGON SPRINGS BUDDHIST INC., INTERNATIONAL BANK OF CHICAGO, SHUJIA GONG a/k/a TIANLIANG ZHANG, HONGZHI LI**, and **RUI LI,**<br><br>*Defendants.* | Case No. 24-8980 (PMH) (JCM) |

**MEMORANDUM OF LAW IN SUPPORT OF THE SHEN YUN DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Steven M. Schneebaum*
Justin E. Butterfield*
Lea E. Patterson*
Terri Marsh*

**Counsel for:**
Shen Yun Performing Arts, Inc.,
Fei Tian College,
Fei Tian Academy of the Arts,
Dragon Springs Buddhist Inc.,
Shujia Gong,
Hongzhi Li, and
Rui Li.

*Admitted pro hac vice.*

Dated: July 30, 2025

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ iv

Introduction ..................................................................................................................................... 1

Statement of Facts .......................................................................................................................... 2

Legal Standard ................................................................................................................................ 4

Argument ........................................................................................................................................ 5

I.     The Complaint Does Not Plausibly Allege That Defendants Knowingly or Intentionally Used Threats of Serious Harm to Obtain Labor in Violation of 18 U.S.C. §1589(a). ......................................................................................................... 5

II.    The Ministerial Exception Bars Plaintiffs' Claims. ................................................. 10

III.   Plaintiffs Fail To Meet the Pleading Requirements of Rule 8. ................................ 14

     A.   Plaintiffs Impermissibly Bundle All Defendants Together. ........................... 14

     B.   Plaintiffs Fail to Meet the High Bar to Establish Alter Ego Liability. ........... 15

     C.   The Complaint Relies on Vague, Uncorroborated, and Obviously Inadmissible Statements Relating to Students Other than Plaintiffs. ................................... 17

IV.   Plaintiffs' Other TVPRA Claims Fail ...................................................................... 17

     A.   There Was No Forced Seizure of Documents. ............................................... 17

     B.   The Claims of Beneficiary Liability Are Insufficient. ................................... 19

     C.   During the Relevant Time Period, the TVPRA Did Not Establish Civil Liability for "Conspiring" or "Attempting" to Benefit from Forced Labor. .................... 20

     D.   In Any Event, the Complaint Does Not Adequately Plead a Conspiracy Claim. ............. 20

V.    The New York State Labor Law Counts Are Not Sustainable. ............................... 21

     A.   The New York Labor Law (NYLL) Does Not Apply. .................................... 21

     B.   In Any Event, the Bulk of the NYLL Claims are Time-Barred. .................... 23

     C.   The NYLL Does Not Apply Outside the State of New York. ......................... 24

     D.   Plaintiff Chang's NYLL §215 Retaliation Claim Is Facially Inadequate. .......... 24

VI.   Claims against Professor Gong are Insufficiently Pleaded. .................................... 25

VII.  Plaintiffs Lack Standing to Seek Prospective Relief.................................................................25

Conclusion ........................................................................................................................................26

Certificate of Compliance ................................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, 2021 WL 7186030 (E.D.N.Y. Apr. 30, 2021) .............21

*Alcazar v. Corp. of Catholic Archbishop of Seattle*, 627 F.3d 1288 (9th Cir. 2010) ........................................11

*Alicea–Hernandez v. Cath. Bishop of Chi.*, 320 F.3d 698 (7th Cir. 2003)......................................................11

*Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997) .........................................................15

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988) .........................................................................16

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)...........................................................5

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................................... 5, 19

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001)..................................................................14, 15

*Baxla v. Chaudhri*, 225 F. Supp. 3d 588 (E.D. Va. 2016) ..............................................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................................... 5, 21

*Bostock v. Clayton Cnty.,* 590 U.S. 644 (2020) ............................................................................................9

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 WL 2206486
(S.D.N.Y. June 1, 2021).............................................................................................................................22

*Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555 (S.D.N.Y. 2016)...............................................................25

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335 (S.D.N.Y. 2013).................15

*Carson as next friend of O. C. v. Makin*, 596 U.S. 767 (2022) ..................................................................8

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)........................................................................5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................................................5

*Chen v. Cai*, No. 19-CV-05387 (PMH), 2022 WL 917575 (S.D.N.Y. Mar. 28, 2022).....................19, 25

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)............................................................23

*Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014)............................................................................................18

*Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008).............................................................................24

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998)..............................................................25

*Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024)......................................................................................26

*EEOC v. Diocese of Raleigh*, 213 F.3d 795 (4th Cir. 2000) ............................................................11

*Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961) .....................................................14

*Fratello v. Archdiocese of New York*, 863 F.3d 190 (2d Cir. 2017)..................................................11

*Frazier v. FCBC Cmty. Dev. Corp.*, No. 22-CV-5270 (LJL), 2023 WL 2970873 (S.D.N.Y. Apr. 17, 2023) ....................................................................................................................................22

*Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044 (2d Cir. 1997).......................................16

*Fulton v. Philadelphia*, 593 U.S. 522 (2021) ...............................................................................23

*Gonzales v. 0 Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ............................9

*Hammell v. Banque Paribas*, No. 90-Civ.-4799(JSM), 1993 WL 426844 (S.D.N.Y. Oct. 22, 1993) ............................................................................................................................................24

*Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006) ................................................................................9

*Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) ................................6, 7, 9, 10

*Headley v. Church of Scientology Int'l*, No. CV 09-3986 DSF(MANX), 2010 WL 3157064 (C.D. Cal. Aug. 5, 2010), *aff'd*, 687 F.3d 1173 (9th Cir. 2012) ..........................................................11

*Hyman v. Rosenbaum Yeshiva of N. Jersey*, 474 N.J. Super. 561 (App. Div. 2023).........................8

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) (*per curiam*).........5

*Kassman v. KPMG LLP*, 925 F.Supp.2d 453 (S.D.N.Y. 2013) .....................................................24

*Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94 (1952)................................................................9

*Kim v. Lee*, 576 F.Supp.3d 14 (S.D.N.Y. 2021)...........................................................................24

*Lagayan v. Odeh*, 199 F. Supp. 3d 21 (D.D.C. 2016) ..................................................................21

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) .....................................................................20

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58 (2d Cir. 2001) .................15, 16

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006).................................................................5

*Martin v. SS Columba-Brigid Cath. Church*, No. 1:21-CV-491, 2022 WL 3348382 (W.D.N.Y. Aug. 12, 2022) ................................................................................................................................12, 13

*Minker v. Baltimore Annual Conference of the United Methodist Church*, 894 F.2d 1354 (D.C. Cir. 1990)..............................................................................................................................................11

*Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017), *as amended* (Mar. 3, 2017)...................... 6, 19

*O'Neill v. Mermaid Touring Inc.*, 968 F.Supp.2d 572, 578-79 (S.D.N.Y. 2013) ..........................................24

*Oppenheimer & Co. Inc. v. Deutsche Bank AG*, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010) ....................17

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020) ...................................................8, 10, 11

*Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F.Supp.3d 430 (E.D.N.Y. 2017)...........................21

*Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875 (9th Cir. 1987).....................................9

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)...........................................................................................10

*Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..................................12

*Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ...................................................................20

*RCM Securities Fund, Inc. v. Stanton*, 928 F.2d 1318 (2d Cir. 1991) ...........................................................19

*Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503 (S.D.N.Y. 2015).................................................................15

*Roe v. St. John's Univ.*, 91 F.4th 643 (2d Cir. 2024) .......................................................................................5

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299 (4th Cir. 2004) .....................................11

*Shan Zhu Qiu v. Holder*, 611 F.3d 403 (7th Cir. 2010) ............................................................................2, 13

So-Ordered Stipulation of Settlement, *Dragon Springs Buddhist, Inc., v. Town of Deerpark, et al.*,
No. 7:13-cv-05968-VB (S.D.N.Y. June 26, 2014) ...................................................................................3

*Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34 (2d Cir. 2023) .............................................................25

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) .........................................................10

*Starkman v. Evans*, 198 F.3d 173 (5th Cir. 1999) .........................................................................................12

*Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F.Supp. 103 (E.D.N.Y. 1993) ..........................16

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017).........................................5

*Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006), *abrogated on other grounds by Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) ......................................12

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011).....................................................................................6

*United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) ..................................................................................8

*Vernonia Sch. Dist. v. Acton*, 515 U.S. 646 (1995) ........................................................................................8

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021) ........................................................................10

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ............................................................................8

*Zhang Jingrong v. Chinese Anti-Cult World All.*, 311 F. Supp. 3d 514 (E.D.N.Y. 2018), *rev'd on other grounds* 16 F.4th 47 (2d Cir. 2021) .................................................................2, 13

*Zhao v. Gonzales*, 404 F.3d 295 (5th Cir. 2005) .........................................................2, 13

## Statutes

18 U.S.C. § 1589.................................................................................5, 6, 10, 17, 19

18 U.S.C. § 1590.................................................................................................17

18 U.S.C. § 1592(a)(1)....................................................................................17, 19

18 U.S.C. § 1594.................................................................................................17

18 U.S.C. § 1595(a)............................................................................................20

26 U.S.C. §501(c)(3)...........................................................................................21

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347 § 101, 136 Stat. 6199, 6200 (2023)...................................................................................................20

N.Y. Lab. L. §650..................................................................................................4

N.Y. Lab. L. §651.............................................................................................21, 22

N.Y. Lab. L. §663.................................................................................................23

The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4 ..............9

Trafficking Victims Protections Reauthorization Act of 2003, Pub. L. No. 108-193, Dec. 19, 2003, 117 Stat. 2875 ..........................................................................................6

## Regulations

N.Y. Comp. Codes R. & Regs., Tit. 12, §142-3.12..........................................................21, 22

## Rules

Federal Rule of Civil Procedure 8 .............................................................................17

## Other Authorities

"Day in the Life of a Ballet Student," Pittsburgh Ballet Theater (May 17, 2017), https://pbt.org/blog/day-life-ballet-student/..............................................................8

N.Y.S. Department of Labor, *Wage Requirements for Interns*, https://dol.ny.gov/system/files/documents/2023/09/p726-6-22-23.pdf ....................................21

New England Commission of Higher Education, Fei Tian College: Accreditation Details, https://www.neche.org/institutions/fei-tian-college/...........................................................3

New York State Department of Education, Institution Data: Fei Tian Academy of the Arts, https://portal.nysed.gov/pls/sedrefpublic/sed_inst_qry$inst.queryviewbykey?P_INST_ID=800000060088&Z_CHK=41056...........................................................3

Shen Yun FAQs, https://www.shenyun.org/faq............................................................12

Shen Yun Performing Arts, Inc., 2023 IRS Form 990................................................2, 12, 22

Shen Yun Performing Arts, *Life at Shen Yun*, https://www.shenyun.org/life-at-shen-yun................12

Teaching Given at the NTDTV Meeting, Minghui, https://en.minghui.org/html/articles/2009/8/20/110204.html........................................12

## INTRODUCTION

For nearly 20 years, Shen Yun, a music and dance ministry of Falun Gong, has been dedicated to sharing traditional Chinese culture and the religious message of Falun Gong worldwide. Shen Yun's elite performers choose to make the high degree of physical and mental commitment that many aspiring performers around the world make. But Shen Yun adds to that a spiritual commitment: to share Falun Gong's message of Truth, Compassion, and Forbearance through their dance.

Plaintiffs once desired to join this exclusive and dedicated group. They and their parents sought their admission to Fei Tian Academy so that they could study and practice, with the goal of becoming Shen Yun performers. They won admission to the Academy and, eventually, achieved their ambition.

The Second Amended Complaint – 116 pages and nearly 600 numbered paragraphs in length – is very far from the "short and plain statement of the claim showing that the pleader is entitled to relief" that FRCP 8 requires. Rather, it is a litany of grievances large and small, concerning people other than Plaintiffs (the purported "Factual Allegations," almost 300 paragraphs, ¶¶46-303, mention Plaintiffs barely a dozen times, none of them with sufficient detail to be verifiable), and events alleged to have occurred many years before this action was brought. It blithely and liberally presents as facts information supposedly gleaned from, *inter alia*, people (other than Plaintiffs) with "indirect knowledge of the facts; press reports, including investigative journalism, and foreign language sources; academic research; internal documents" and the like (¶46). None of these is identified, and no reason is presented for the Court to take any of this material as credible.

The Shen Yun Defendants deny the vast bulk of the factual claims thrown at them by Plaintiffs. But the Complaint is also legally deficient: fatally so, as is shown in the following pages.

The Court should dismiss the Second Amended Complaint.

## STATEMENT OF FACTS

Falun Gong is a religion "closely related" to Buddhism. *Zhang Jingrong v. Chinese Anti-Cult World All.*, 311 F.Supp.3d 514, 559 (E.D.N.Y. 2018), *rev'd on other grounds* 16 F.4th 47 (2d Cir. 2021). Defendant Li Hongzhi founded Falun Gong (also called Falun Dafa) in 1992, authoring the "main corpus of Falun Gong beliefs, Zhuan Falun." *Id.* at 525; Second Amended Complaint ("SAC") ¶38. "Falun Gong has many traditional hallmarks of a religion: (1) a leader, (2) foundational texts, (3) a path to salvation, (4) holidays, (5) belief in a higher being, and (6) dietary restrictions," as well as a metaphysical realm. *Zhang,* 311 F.Supp.3d at 525, 559–60. It is therefore a religion under U.S. law. *See id.*; *Zhao v. Gonzales*, 404 F.3d 295, 308 (5th Cir. 2005).

"Falun Gong is strictly prohibited by the Chinese government." *Shan Zhu Qiu v. Holder*, 611 F.3d 403, 404 (7th Cir. 2010). Although Falun Gong was originally practiced openly, the Chinese government outlawed it in 1999 as "heretical," after practitioners held a large, peaceful demonstration in Beijing to protest police harassment. *Zhang*, 311 F.Supp.3d at 531. Adherents, who number in the tens of millions, face severe persecution in China, including torture and imprisonment in "reeducation" labor camps. *See Shan Zhu Qiu*, 611 F.3d at 407-08.

Shen Yun Performing Arts, Inc., is a nonprofit §501(c)(3) organization whose mission is "to carry forward the goodness of [Falun Dafa] and [the] universal principle[s] of Truth, Compassion, and Forbearance. To bring together talented artists of different nationality to revive the true, five-millennia-old artistic tradition." SAC ¶34; Shen Yun Performing Arts, Inc., 2023 IRS Form 990, attached as Exhibit A ("SY 990"). Its performances feature classical Chinese dance accompanied by live orchestras. SAC ¶34, 53. Shen Yun choreography requires extensive training and discipline. SAC ¶¶54-55. It incorporates Falun Gong practice, including meditation and study, into performers' daily schedules. SAC ¶95. Through music and dance, Shen Yun communicates Falun Gong religious principles, ultimately seeking people's salvation. SAC ¶¶95, 185; 313; SY 990. In keeping with the

mission to share the message of Falun Gong, Shen Yun performances include scenes designed to raise awareness of the persecution of practitioners in China. SAC ¶50.

Dragon Springs Buddhist, Inc., is a nonprofit organization, recognized by the IRS as a church,[1] and located in Cuddebackville, New York. SAC ¶¶37. It features three traditionally-constructed Buddhist temples, and is a Place of Worship under local zoning law. So-Ordered Stipulation of Settlement, *Dragon Springs Buddhist, Inc., v. Town of Deerpark,* et al., No. 7:13-cv-05968-VB (S.D.N.Y. June 26, 2014). Its campus is also home to Shen Yun and the Fei Tian schools. SAC ¶106.

Fei Tian Academy of the Arts is a §501(c)(3) religious secondary boarding school specializing in performing arts. SAC ¶35. It was granted an Absolute Charter by the New York State Board of Regents in 2009,[2] and the IRS considers it an integrated auxiliary of a church.[3] Fei Tian College is a §501(c)(3) religious post-secondary educational institution also specializing in performing arts, SAC ¶36, accredited by the New England Commission of Higher Education, and offering both baccalaureate and master's degrees.[4] Academy students take the SAT. SAC ¶396. Academy and College students and Shen Yun performers participate in daily study and practice of Falun Gong. SAC ¶95. As religious schools, *see* SAC ¶¶95, 120, 135, 313, the two Fei Tian institutions require students to adhere to a code of conduct consistent with their faith, which restricts contact between boys and girls and limits access to materials contrary to Falun Gong principles. SAC ¶¶189, 217. The schools also have security and safety protocols, such as requiring students to obtain permission before leaving campus. SAC ¶166. Although students are not allowed smartphones, they may have conventional phones, tablets, and regulated internet access. SAC ¶¶182–83, 402. Plaintiffs traveled, with their

---

[1] Dragon Springs IRS Determination letter, attached as Exhibit B.
[2] New York State Department of Education, Institution Data: Fei Tian Academy of the Arts, https://portal.nysed.gov/pls/sedrefpublic/sed_inst_qry$inst.queryviewbykey?P_INST_ID=800000060088&Z_CHK=41056.
[3] Fei Tian Academy IRS Determination Letter, Exhibit C.
[4] New England Commission of Higher Education, Fei Tian College: Accreditation Details, https://www.neche.org/institutions/fei-tian-college/.

passports, to visit their families and for performance tours, and those who chose to leave were permitted to do so. SAC ¶¶322, 336, 387, 427, 437, 467, 505.

Defendant Shujia Gong is a professor at Fei Tian College. SAC ¶124.

Plaintiffs are children or family members of Falun Gong practitioners, and they enrolled in Fei Tian Academy with the hope of performing with Shen Yun. SAC ¶¶306-11, 383-84, 433-36, 470-71, 474.[5] They did so because of their dedication to their families and to participate in Shen Yun's mission to save souls. *See, e.g.,* SAC ¶¶307, 312-13, 383-84. They ultimately qualified to dance with Shen Yun, and did so during their studies at Fei Tian Academy and College. SAC ¶¶315–16, 321, 325, 384, 386, 390, 434, 436, 443, 473-74.

Plaintiffs allege that they continued to attend the Academy and College and to perform with Shen Yun because of concern that leaving would "open them up to physical and moral peril," subject them to "moral condemnation," and result in ostracism from the community, suffering misfortune or "fail[ing] at life." SAC ¶¶147-48, 423.Plaintiff Wang did not perform with Shen Yun after 2017 (SAC, ¶424), Chang and Xie all left Shen Yun in 2020. SAC ¶¶367, 464, and Zhu left sometime after 2020, SAC ¶470.

They now bring forced labor and related claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§1589–97, and minimum wage and related claims under New York's Labor Law ("NYLL"), N.Y. Lab. L. §650 *et seq.*

## LEGAL STANDARD

Defendants move to dismiss the Complaint under FRCP 12(b)(1) and (6). On a motion to dismiss, the Court may consider the complaint, documents attached or incorporated by reference, matters of public record subject to judicial notice, and any document that, because "the complaint 'relies heavily

---

[5] Plaintiff Chang even persevered through a failed audition and re-auditioned the next year. SAC ¶¶308, 311.

upon its terms and effect,' [is] 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*)); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

Claims are subject to dismissal under FRCP 12(b)(6) where plaintiffs would be unable to prevail even if the well-pleaded allegations in the complaint were taken as true.  "A complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Legal conclusions presented as facts are not entitled to the presumption of truth. *Id.* (a complaint must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

In considering motions under FRCP 12(b)(1), "[t]he task of the district court is to determine whether the pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (alterations in original)).

## ARGUMENT

## I. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT DEFENDANTS KNOWINGLY OR INTENTIONALLY USED THREATS OF SERIOUS HARM TO OBTAIN LABOR IN VIOLATION OF 18 U.S.C. §1589(a).

Plaintiffs' claims for forced labor under 18 U.S.C. §1589(a) (Count I) should be dismissed. Even if the allegations in those Counts were true, they would not establish a TVPRA violation.

As relevant here, the TVPRA criminalizes "knowingly" obtaining "the labor or services of a person" by means of: (1) "force, threats of force, physical restraint, or threats of physical restraint to that person or another person"; (2) "serious harm or threats of serious harm to that person or another

person"; or (3) "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. §1589(a)(1), (2), (4). *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1178 (9th Cir. 2012). The term "serious harm" is objectively defined, 18 U.S.C. § 1589(c)(2). And the defendant(s) must have knowingly employed such means to acquire labor or services. *See Headley*, 687 F.3d at 1179; *U.S. v. Dann,* 652 F.3d 1160, 1169–70 (9th Cir. 2011). A §1589(a) claim, therefore, requires allegations sufficient to establish that the defendants "*knowingly* or *intentionally* engaged in actions or made threats that were sufficiently serious to compel a reasonable person in [Plaintiffs'] position to *remain* in [Defendants'] employ, against [their] will and in order to avoid such threats of harm, when [they] otherwise would have left." *Muchira v. Al-Rawaf*, 850 F.3d 605, 620 (4th Cir. 2017), *as amended* (Mar. 3, 2017) (emphasis in original).

However, "not all bad employer-employee relationships or even bad employer-immigrant … relationships will constitute forced labor." *Dann*, 652 F.3d at 1170; *Muchira*, 850 F.3d at 620. *Headley* is particularly instructive. The Ninth Circuit rejected Trafficking Victims Protection Act ("TVPA")[6] claims brought by former members of Sea Org, an "elite religious order" that functioned as the "evangelical wing" of the Church of Scientology. *Headley*, 687 F.3d at 1174. Sea Org members were required "to work long hours without material compensation, to live communally, to adhere to strict ethical standards, and to be subject to firm discipline for ethical transgressions," including verbal reprimands, required participation in confessionals, loss of privileges, unpleasant manual labor, a restricted diet, or expulsion. *Id.* at 1174–76. "The Sea Org's lifestyle constraints include[d] strict policies on outside communications, marriage, … children," and outside travel. *Id.* at 1175. Members who left without authorization and did not return were shunned *Id.* at 1178, 1180. Marc and Claire

---

[6] The TVPA was reauthorized by the TVPRA in 2003 to add a civil remedy but was otherwise substantively unchanged. *See* Pub. L. No. 108-193, Dec. 19, 2003, 117 Stat. 2875.

Headley both worked more than 100 hours per week for Sea Org but received no compensation other than living expenses and a small stipend. *Id.* at 1176. Both "experienced and observed verbal reprimands and physical abuse." *Id.*

The Ninth Circuit rejected the Headleys' forced labor claims, explaining that they had "joined and voluntarily worked for Sea Org because they believed that it was the right thing to do, because they enjoyed it, and because they thought that by working they were honoring the commitment that they each made." *Id.* at 1179-80. They were able to leave when they decided they no longer wanted to tolerate Sea Org's requirements. *Id.* at 1180. And Sea Org was entitled to require members to adhere to their religious rules and to shun them for leaving. *Id.*

Plaintiffs cannot show a TVPRA violation for similar reasons. Like the Headleys, Plaintiffs ground "their forced-labor claims on the theory that [Defendants] psychologically coerced them to provide labor." *See id.* at 1178. But all the Complaint reveals is that Plaintiffs were students who sought admission to and success in an elite performing arts academy (one persevering despite a failed audition) with their parents' encouragement, hoping to achieve a high standard of performance and to further the practice of Falun Gong (which, they were informed, is difficult and requires dedication). *See, e.g.,* SAC ¶¶306-07, 311-313, 383-84. Ultimately, they were simply boarding-school students. They had phones, tablets, iPods, and internet access. SAC ¶¶123, 182–83, 188, 449. Security was provided, as is expected of a secondary school responsible for housing young people, and students had to obtain permission to leave campus. SAC ¶319. Plaintiffs traveled, with their passports, both to visit their families and for performance tours, and those who chose to leave were permitted to do so. SAC ¶¶322, 336, 387, 427, 437, 467, 505.

Requiring adherence to a school's religious beliefs (including its standards of moral conduct), restricting media consumption to that consistent with the school's faith, and regulating interaction between the sexes (*see, e.g.,* SAC ¶¶182–83, 189, 217, 402) are common policies in religious schools of

many faiths. *See, e.g.*, *Hyman v. Rosenbaum Yeshiva of North Jersey*, 474 N.J. Super. 561, 565 (App. Div. 2023). The Constitution protects the right of a religious school to educate students according to its faith. *See Carson as next friend of O. C. v. Makin*, 596 U.S. 767, 780, 784–87 (2022); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 753–54 (2020); *Wisconsin v. Yoder*, 406 U.S. 205, 217–18 (1972).

Regulating media (including social media) use and consumption, smartphones, and interaction with the opposite sex (*see* SAC ¶¶182-83, 189, 217) are also common parenting standards, which a secondary school would naturally employ when acting *in loco parentis*. *See Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 655 (1995). Strict parenting is not coercion within the meaning of the TVPRA. *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014) ("[W]e should not – without a clear expression of Congressional intent – transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude into one that generally makes it a crime for a person *in loco parentis* to require household chores, or makes child abuse a federal crime."). Nor is compliance with New York Covid lockdown regulations (SAC ¶479) or refusal to consent to a warrantless search (SAC ¶173).

And though Plaintiffs disparage the schools' curricula, *see* SAC ¶120, 124, they offer no basis to conclude that their coursework is unusual among specialized performing arts schools. Plaintiffs' schedule (SAC ¶120) is similar to those of students competing at a high level in sports, gymnastics, or ballet. *See, e.g.*, "Day in the Life of a Ballet Student," Pittsburgh Ballet Theater (May 17, 2017), https://pbt.org/blog/day-life-ballet-student/; "What I Learned: Over 50 Olympians' Daily Routines," OWaves.com (July 29, 2024), https://owaves.com/what-i-learned-from-researching-50-olympians/. And though Plaintiffs criticize teachers' qualifications, they do not dispute that Fei Tian Academy and College select instructors they believe will best educate their students. SAC ¶124. In fact, the SAC demonstrates that Academy students take the SAT and that the College has objective graduation exams. SAC ¶¶396, 504.

Moreover, the harm Plaintiffs allege that they feared was *religious* harm: "moral peril," "moral condemnation," "fail[ing] at life," or separation from the Falun Gong community. *See, e.g.,* SAC ¶¶20, 147-48, 423, 461. Concerns about karmic misfortune do not amount to threats of serious harm—let alone threats of *physical* harm—within the meaning of the TVPRA, as Plaintiffs claim, *see* SAC ¶148. The Free Exercise Clause protects a religious organization's right to operate according to its faith, *see, e.g.*, *Kedroff v. Saint Nicholas Cathedral,* 344 U.S. 94, 114–16 (1952), and it may enforce compliance with its doctrine through shunning, "disfellowship," or public reprimand. *Headley*, 687 F.3d at 1180 ("A church is entitled to stop associating with someone who abandons it. … A church may also warn that it will stop associating with members who do not act in accordance with church doctrine. The former is a legitimate consequence, the latter a legitimate warning."); *Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 883 (9th Cir. 1987) (holding that the Free Exercise Clause protects the practice of shunning, explaining that when "[t]he members of [a] [c]hurch" "no longer want to associate with" someone who has "abandon[ed]" them, those members "are free" under the First Amendment "to make that choice").

Interpreting the TVPRA to encompass these common religious practices would not only violate the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb–2000bb-4,[7] but would criminalize the missionary activities and faith-based schools of major religions throughout the country. *Headley*, 687 F.3d at 1181 (noting that if Sea Orgs rules violated the TVPRA, the court would have to consider "whether the Act would have to be given a limiting construction to avoid constitutional problems").

---

[7] RFRA is a "super statute" that displaces the normal operation of federal legislation imposing a substantial burden on religious exercise. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 682 (2020); *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 430–31 (2006); *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006) (RFRA may be raised as an affirmative defense).

Finally, even if the allegations (which Defendants deny) were true, and medical treatment was eschewed in favor of meditation and prayer (*i.e.*, for religious reasons), *see* SAC ¶¶349-50, 409, intent to encourage religious practice is not the same as intent to acquire forced labor. *See Headley*, 687 F.3d at 1179.

Ultimately, Plaintiffs may disagree with their parents' choice of school. But their parents had the right to direct their upbringing, including by enrolling them in institutions that would educate them consistently with their religion. *See Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925)*; Mahmoud v. Taylor*, No. 24-297, 2025 WL 1773627, at *13 (U.S. June 27, 2025) ("[F]or many people of faith across the country, there are few religious acts more important than the religious education of their children. … The practice of educating one's children in one's religious beliefs, like all religious acts and practices, receives a generous measure of protection from our Constitution."). As in *Headley*, Plaintiffs "joined and voluntarily" practiced and performed with Shen Yun "because they believed that it was the right thing to do … and because they thought that by [participating in Shen Yun] they were honoring" their family and furthering their faith. *See Headley*, 687 F.3d at 1179; *see e.g.*, SAC ¶¶307, 312-13, 383-84. Accordingly, there has been no "forced labor," and Plaintiffs have not adequately alleged violations of 18 U.S.C. §1589(a).

## II. THE MINISTERIAL EXCEPTION BARS PLAINTIFFS' CLAIMS.

While the Ministerial Exception is an affirmative defense, "'a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

Under the Ministerial Exception, "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Our Lady of Guadalupe Sch.,* 591 U.S. at 746. It prevents interference with a religious organization's independence

10

by prohibiting government control over the appointment, engagement, or compensation of "ministers." *See id.* at 746–47; *Fratello v. Archdiocese of New York*, 863 F.3d 190, 200–02 (2d Cir. 2017). It bars a wide swath of employment-related causes of action, including under wage and hour laws, *Alcazar v. Corp. of Catholic Archbishop of Seattle*, 627 F.3d 1288, 1293 (9th Cir. 2010); *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 309-11 (4th Cir. 2004), and TVPRA claims, *Headley v. Church of Scientology Int'l*, No. CV 09-3986 DSF(MANX), 2010 WL 3157064 (C.D. Cal. Aug. 5, 2010), *aff'd,* 687 F.3d 1173 (9th Cir. 2012).

A "minister," as that term is used within the Ministerial Exception, does not mean only a pastor, priest, or rabbi. It includes anyone who communicates a religious message on behalf of a faith-based organization or performs "significant religious functions to advance its religious mission." *Fratello*, 863 F.3d at 208–09; *Our Lady of Guadalupe Sch.*, 591 U.S. at 753; *Alicea–Hernandez v. Cath. Bishop of Chi.*, 320 F.3d 698, 704 (7th Cir. 2003). A minister may convey that message through performance art. "[M]usic is an integral part of many different religious traditions" and "a vital means of expressing and celebrating those beliefs which a religious community holds most sacred." *EEOC v. Diocese of Raleigh*, 213 F.3d 795, 802 (4th Cir. 2000). "'[D]etermination of whose voice speaks for the church is *per se* a religious matter.'…This is no less true when the voice that speaks is the voice of song." *Id.* at 805 (quoting *Minker v. Balt. Annual Conference of the United Methodist Church*, 894 F.2d 1354, 1356 (D.C. Cir. 1990)).

The same principle applies to dance, and a court may not "privilege modes of religious expression that draw principally from the rational faculties, such as preaching or the teaching of theology, over those which summon the more lyrical elements of the human spirit." *Diocese of Raleigh,* 213 F.3d at 805. Courts consistently apply the Ministerial Exception to people engaged in religious musical performance. *See, e.g., Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036, 1040–41 (7th Cir. 2006), *abrogated on other grounds by Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4

11

(2012) (church organist); *Starkman v. Evans,* 198 F.3d 173, 176 (5th Cir. 1999) (choir director); *Martin v. SS. Columba-Brigid Cath. Church*, No. 1:21-CV-491, 2022 WL 3348382 at *6–7 (W.D.N.Y. Aug. 12, 2022) (dismissing choir director's employment claims because she "performed duties with a significant religious dimension").

Shen Yun is a Falun Gong evangelistic ministry, in which "disciples" use performance to offer salvation through elaboration of divine principles: Truth, Compassion, and Forbearance. SAC ¶¶76 n.10, 95-96, 185, 313; SY 990. As Hongzhi Li has explained, the purpose of Shen Yun performances is "saving people." SAC ¶313, *see also* Teaching Given at the NTDTV Meeting, Minghui, https://en.minghui.org/html/articles/2009/8/20/110204.html (cited in SAC ¶76 n.10). Plaintiffs mischaracterize Shen Yun's promotional materials, which explain Shen Yun's religious nature:

> Shen Yun's artists practice Falun Dafa, and it is a source of inspiration for our performances. Both China and the West have a history of artists integrating spirituality into their work. In ancient China, artists would practice meditation and seek inner stillness and a connection with the universe. Today, Shen Yun's artists follow this noble tradition.[8]

Shen Yun Performing Arts, *FAQ*, https://www.shenyun.org/faq (partially quoted in SAC ¶95 n.17); Shen Yun Performing Arts, *Life at Shen Yun*, https://www.shenyun.org/life-at-shen-yun (cited in SAC ¶95 n.16) (describing Shen Yun performers as "spiritual seekers" and Shen Yun as "a spiritual community … guided by the spiritual practice of Falun Dafa."). *See Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."). Its performers are, therefore, "ministers" under the First Amendment.

---

[8] Plaintiffs omitted from ¶95 the portion of the cited paragraph describing the integration of Falun Gong spirituality into Shen Yun performances. The SAC, *e.g.* at ¶53, n.6, also cherry-picks quotations from "9 Characteristics that Make SY Unique," https://www.shenyun.org/classical-chinese-dance-music-costumes-singers-and-more. That page explains that Shen Yun seeks to revive China's "spiritual heritage," including the "belief that its glorious culture was brought down from above."

That "according to many of Hongzhi Li's statements, Falun Gong is not a religion," SAC ¶3, is irrelevant. Whether a belief system is a religion under U.S. law is a question of function, as court judgments involving Falun Gong practitioners have recognized:

> Falun Gong is closely related to, and can be considered a sect of, Buddhism. … Falun Gong's founder's claim that it is not a religion is based on differing concepts of religion in China and the United States. In China, religion is often defined by formalities, such as state recognition, fixed places of worship, and clergy. Falun Gong is mostly practiced individually, without the characteristics associated with religious practice in China.

*Zhang*, 311 F.Supp.3d at 559–60; *see Zhao*, 404 F.3d at 308 (noting that Falun Gong is a religion under the Immigration and Nationality Act); *Shan Zhu Qiu*, 611 F.3d at 404 (same).

In the SAC, Plaintiffs attempt to conceal the religious nature of Falun Gong and the religious mission of Shen Yun and the Fei Tian Schools by secularizing the language of the earlier version, *compare* First Amended Complaint ("FAC") ¶134 *with* SAC ¶191 (substituting "energy" for "karma"), deleting most references to "saving souls," *e.g.*, FAC ¶281, and omitting discussion of Falun Gong's teachings with respect to planes of existence and the nature of the afterlife. *Compare* FAC ¶176–77 *with* SAC ¶243-44. But Plaintiffs cannot defeat application of the Ministerial Exception simply by amending the complaint to add conclusory denials contradicted by the SAC itself and the sources it cites. *See, e.g.*, SAC ¶¶95–96, 185, 313; *see also* ¶¶56 n. 9, 76 n.10, 95 n.17 (referring to sources that describe Shen Yun's religious mission). Also, because the religious details in the FAC are "seriously made statements" and are consistent with the SAC's acknowledgment that Shen Yun's mission is to save people, *see* SAC ¶¶95, 313, the Court may consider them. *Martin*, No. 1:21-CV-491, 2022 WL 3348382 at *6–7.

The SAC and the materials it cites establish that Shen Yun performers carry out a spiritual mission to share their faith and save souls. Sustaining Plaintiffs' claims would be incompatible with the First Amendment's protection of the free exercise of religion. The Ministerial Exception bars Plaintiffs' claims in their entirety.

## III. PLAINTIFFS FAIL TO MEET THE PLEADING REQUIREMENTS OF RULE 8.

The Complaint also suffers from overarching pleading defects, which individually and together also warrant dismissal.

### A. Plaintiffs Impermissibly Bundle All Defendants Together.

"[A]t a minimum," FRCP 8 "requires … that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F.App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). Complaints that "lump[] all the defendants together in each claim and provide no factual basis to distinguish their conduct" fail to satisfy this minimum standard. *Id.* Yet Plaintiffs do precisely that. They make undifferentiated claims against six individuals and entities – whom they refer to collectively as "Shen Yun Defendants" – providing no specificity as to which Defendant is alleged to have done what. For example, they repeatedly allege that "the Shen Yun Defendants" recruited children. *E.g.*, SAC ¶¶2, 107, 549. But they never say which Defendant(s) did this. Indeed, according to the SAC, no one "recruited" them. Their parents wished them to attend Fei Tian Academy, they agreed, and they auditioned (in Plaintiff Chang's case, more than once) to gain admission. *See, e.g., id.* ¶¶308-311, 384, 433-34.

That is but one illustration. The Complaint consistently, throughout its 595-paragraph narrative, recites the alleged acts of "Shen Yun Defendants" generically, including that "Shen Yun Defendants" tightly control performers' schedules, SAC ¶7; told performers to smuggle money into the U.S., ¶170; said performers "would be paid in 'virtue'" for their work, ¶293; denied them medical treatment. ¶¶16, 190, 351; collected Academy students' passports, ¶¶317, 387, 437, 475; and so on.

This improper grouping of six Defendants extends even to acts or statements allegedly directed toward Plaintiffs themselves. For example, ¶337 alleges that "Shen Yun Defendants" told Plaintiff Chang "that all her calls were being monitored, and she was not allowed to speak badly about the

school." Plaintiffs allege in ¶¶340-344 that "Shen Yun Defendants and their agents" told Chang that she could not leave the Shen Yun campus, speak to anyone of the opposite sex, read unauthorized materials, have a smart phone, or use the internet. Paragraph 349 says that after an injury, "Defendants told Plaintiff Chang that she needed to pray to feel better," and ¶358 alleges that "Shen Yun Defendants and their agents" publicly shamed Chang for eating too much. Did Dragon Springs Buddhist do those things? Did Fei Tian Academy? Did Rui Li? Did Professor Gong? How? And when? This is just what the Second Circuit warned against in *Atuahene*: "failing to identify which defendants were alleged to be responsible for which alleged violations." 10 F.App'x at 34.

**B. Plaintiffs Fail to Meet the High Bar to Establish Alter Ego Liability.**

To justify bundling Defendants, Plaintiffs contend that all of the Entities are "alter egos" of Hongzhi and Rui Li. SAC ¶40. But to pierce the corporate veil, a plaintiff must show that (1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and (2) such domination was used to commit a fraud or wrong that injured" the plaintiff. *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). Ignoring the separate existence of corporations is extraordinary, and "conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503, 525 (S.D.N.Y. 2015) (quoting *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013)). In determining whether such a step is justified, courts look to multiple factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio*, 268 F.3d at 63 (quoting *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).

Plaintiffs fail to clear this high bar. As an initial matter, they affirmatively state that Shen Yun is more than adequately capitalized and remain silent as to the other entities, conceding that the second factor does not apply. SAC ¶87.

The allegations as to most of the remaining factors are conclusory and unsupported. Regarding the first, the SAC simply reports that "[n]one of the Shen Yun Entity Defendants adhere to corporate formalities." SAC ¶41. But this *ipse dixit* must be disregarded. *See, e.g.*, *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F.Supp. 103, 105 (E.D.N.Y. 1993) (discrediting recitation of factors where the complaint "merely restates the appropriate legal standard to pierce the corporate veil"). As to the intermingling of property, Plaintiffs offer no more than that the Lis "effectively control" the assets of the Entity Defendants. SAC ¶88; *see also* ¶ 82 (unsupported assertions that the Entity Defendants "subsidize" the Lis). Plaintiffs' statements about the Lis' consumer habits and personal assets, such as a home purchased before Shen Yun began operations in 2006, *see* SAC ¶¶48, 88, fare no better. With respect to factors seven, eight, and ten, the claims are merely a threadbare recital of the legal prerequisites. *See* SAC ¶¶81, 84-86.

Nor do Plaintiffs offer any nonconclusory allegations to support factors four, six, or seven. They merely assert that Hongzhi Li "has absolute administrative authority across" all Entity Defendants, SAC ¶69, and that Rui Li is "his right-hand lieutenant," SAC ¶70. Such claims do not become any less conclusory by the parroting of generic accusations that unidentified "administrators" report to the Lis. *See, e.g.*, SAC ¶¶71, 73. But even if the Lis were directors or officers of all the Entity Defendants, that would still be insufficient. *See, e.g.*, *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (describing shared directors in corporate structures "commonplace" and holding that evidence of overlapping directors is insufficient to pierce the corporate veil).

16

There is no dispute that the Entity Defendants share the same address, SAC ¶¶34–37, and that certain buildings at Dragon Springs are used by each of them. *See* SAC ¶106. But the sharing of a campus is hardly unusual and is insufficient to establish that any is the alter ego of another. *See, e.g.*, *Oppenheimer & Co. Inc. v. Deutsche Bank AG*, 2010 WL 743915, at *4 (S.D.N.Y. Mar. 2, 2010) (finding shared addresses and telephone numbers insufficient even when coupled with overlap in personnel and control of operational and financial policies).

### C. The Complaint Relies on Vague, Uncorroborated, and Obviously Inadmissible Statements Relating to Students Other than Plaintiffs.

The Complaint repeatedly recites what Plaintiffs claim to have happened to other "Performers," not to themselves. *See, e.g.*, SAC ¶17 (unnamed "Performers"—not Plaintiffs—were required to carry large amounts of cash into the country); ¶18-19 ("Performers"—not Plaintiffs—had arranged marriages or were "subjected to mass criticism sessions"); ¶142 ("Performers"—not Plaintiffs—were sometimes prohibited from using the bathroom). These bare assertions are not a proper part of a federal court complaint: they certainly do not come within Rule 8(a)(2)'s requirement that a pleading be "a short and plain statement of the claim showing that the pleader is entitled to relief."

## IV. PLAINTIFFS' OTHER TVPRA CLAIMS FAIL

Plaintiffs' remaining TVPRA claims require a predicate §1589(a) violation. *See* 18 U.S.C. §§ 1589(b) (Count II) (Beneficiary Liability), 1590(a) (Count III) (Trafficking in Forced Labor); 1592(a)(1) (Count VI) (Document Seizure); 1594 (Counts IV, V) (Conspiracy and Attempt). Because, as shown above, the §1589(a) allegations (Count I) (Forced Labor) are inadequate to survive a motion to dismiss, the remaining TVPRA Counts fail as well.

### A. There Was No Forced Seizure of Documents.

Count VI (SAC ¶¶564-568) alleges that "the Shen Yun Defendants" violated 18 U.S.C. §1592(a), which creates civil liability for someone who "knowingly destroys, conceals, removes, confiscates, or

possesses any actual or purported passport or other immigration document," if such conduct violated other sections of the TVPRA. This claim is meritless.

Plaintiffs say that they were required to turn their passports in to the school office when they arrived at Dragon Springs as minors. SAC ¶¶ 317, 387, 437, 475. They concede that their passports were returned when they needed to travel (both on tour and when returning home to visit family) and when they left Dragon Springs permanently. SAC ¶¶161, 163, 336, 387, 437, 475.

There is no allegation that Plaintiffs, or their parents, did not consent to the Academy (or College) acting as custodian of its students' documents. No Plaintiff claims that they ever requested to have their passports returned, much less that such requests were denied. Nothing in the Complaint suggests that the holding of passports in a secure location—part of standard operating procedures in boarding schools housing teenaged students—was not utterly routine. It would be a highly unusual, and indeed an obviously irresponsible, residential school that would allow young students to keep documents as valuable as passports in their dormitory rooms.

Xie and Zhu allege that "the Shen Yun Defendants kept possession of [their] passports even after [they] turned 18." SAC ¶¶437, 475. But they do not say that anyone took the documents from them, or that they ever asked for and were denied access to them. As adults, neither was enrolled at the Academy, so presumably *that* Defendant is not accused of anything relevant. But Plaintiffs do not claim that any Shen Yun Defendant removed their passports from them without their consent, much less refused to return them when asked.

Situations in which courts have cited the confiscation of documents as part of a scheme of actionable trafficking are readily distinguishable from these facts. In all of those, the trafficking victims were adults, whose employers made it impossible for them to escape without travel documents, despite their desire to do so. In *Cruz v. Maypa*, 773 F.3d 138, 142 (4th Cir. 2014), for instance, the employer of a domestic servant not only held her passport against her will, but lied to her about her visa status,

causing her to believe that if she tried to break free of her forced isolation she would be deported or worse. But in *Muchira*, the TVPRA was not violated even though the plaintiff's employers kept her passport, because there was no evidence that they refused to return it on request or that they intended to secure her services by holding it. 850 F.3d at 623–24.

The Complaint is very heavy on assertions of what Plaintiffs "feared," but it is unacceptably light on specific allegations that Defendants violated the TVPRA. The claim that a boarding school's routine retention of its students' passports constitutes "concealment" or "confiscation" under 18 U.S.C. §1592 is untenable, and the handful of conclusory allegations to the contrary do not come close to the specificity required by controlling precedent. *See Iqbal,* 556 U.S. at 678–79.

### B. The Claims of Beneficiary Liability Are Insufficient.

The TVPRA imposes liability on anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged" in forced labor under §1589(a), "knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." 18 U.S.C. §1589(b). The pleading deficiencies explained in Section III above cripple Plaintiffs' beneficiary liability claims, not only because they are woefully unsupported (*see, e.g.*, SAC ¶¶538–544), but also because they conflate all Defendants together, with no particular Defendant's actions or intent singled out.

Plaintiffs speculate that Defendants Hongzhi Li and Rui Li have owned expensive properties, but they do not demonstrate any relevance of that claim. *See* SAC ¶88. Nor do Rui Li's shopping preferences or friendships, *see* SAC ¶542, have any probative or evidentiary value. *Cf. RCM Securities Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991) (explaining that a bare allegation of profit in a transaction without further specifics is conclusory). They do not, in other words, adequately aver that the Lis "benefited" from a trafficking scheme. *See Chen v. Cai*, No. 19-CV-05387 (PMH), 2022 WL 917575 at *5 (S.D.N.Y. Mar. 28, 2022).

### C.  During the Relevant Time Period, the TVPRA Did Not Establish Civil Liability for "Conspiring" or "Attempting" to Benefit from Forced Labor.

Counts IV (conspiracy, including conspiracy to benefit) (SAC ¶¶552-558), and V (attempting to benefit from a trafficking venture) (SAC ¶¶559-563), fail as a matter of law, because Congress did not authorize these forms of civil liability until after Plaintiffs left Dragon Springs. The current language of TVPRA including such a provision, 18 U.S.C. §1595(a), was not added until the Abolish Trafficking Reauthorization Act of 2022, signed into law by President Biden in early 2023. Pub. L. No. 117-347 §101, 136 Stat. 6199, 6200 (2023). Congress did not specify that the amendment was to apply retroactively, and to interpret it in such a manner would impermissibly "increase a party's liability for past conduct." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *see also Velez v. Sanchez*, 693 F.3d 308, 324–25 (2d Cir. 2012) (holding that the 2008 amendment adding civil remedy provisions to TVPRA did not apply retroactively). Before the 2023 amendment, the statute did not authorize claims for attempting or conspiring to benefit from trafficking. "Had Congress intended to create civil liability under §1595 for attempts to benefit, … it would have done so in express terms." *Ratha v. Phatthana Seafood Co.,* 35 F.4th 1159, 1175–76 (9th Cir. 2022).[9]

Plaintiffs do not claim to have performed any work for Defendants after the statutory amendment came into effect. *See* SAC ¶¶367, 424, 464. Because the applicable version of TVPRA when Plaintiffs were performers with Shen Yun did not provide civil liability for conspiracies or attempts to benefit from trafficking, Counts IV and V should be dismissed.

### D.  In Any Event, the Complaint Does Not Adequately Plead a Conspiracy Claim.

Even if Plaintiffs' claims that Defendants conspired to recruit them for forced labor and to benefit from it, SAC ¶¶555-56, were actionable, they would still fail. "Conspiracy requires an agreement to

---

[9] While *Ratha* specifically addressed "attempts to benefit" from trafficking, the Ninth Circuit's reasoning applies with equal force to a claim of "conspiracy to benefit." Before the 2023 amendment, §1595 contained no language referencing either.

violate the prohibition on forced labor." *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, 2021 WL 7186030, at *11 (E.D.N.Y. Apr. 30, 2021). "To support a conspiracy claim, the complaint must contain 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Baxla v. Chaudhri*, 225 F.Supp.3d 588, 594 (E.D. Va. 2016) (quoting *Lagayan v. Odeh*, 199 F.Supp.3d 21, 30 (D.D.C. 2016) (quoting *Twombly*, 550 U.S. at 556)). While the TVPRA does not require "proof of an explicit agreement," "the evidence must allow the jury to infer that the conspirators entered a joint enterprise and were aware of its general nature and extent." *Akhtar*, 2021 WL 7186030, at *11; *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F.Supp.3d 430, 440 (E.D.N.Y. 2017).

Plaintiffs do not and cannot allege the requisite agreement. "An allegation of mere parallel conduct is not enough … [n]or are mere conclusory allegations." *Baxla*, 225 F.Supp.3d at 194 (quoting *Lagayan*, 199 F.Supp.3d at 30, *Twombly*, 550 U.S. at 557). And since, for the reasons discussed in Section I, *supra*, the Complaint does not plausibly state TVPRA violations, Defendants cannot be liable for conspiring to engage in them.

## V.  THE NEW YORK STATE LABOR LAW COUNTS ARE NOT SUSTAINABLE.

### A.  The New York Labor Law (NYLL) Does Not Apply.

#### 1.  Students are exempt from the NYLL

Plaintiffs were not "employees," and no Defendant was an "employer," within the meaning of the NYLL. The statute contains an exception for someone working "in or for … a religious, educational, or charitable institution if such individual is a student." *See* NYLL §651(5)(h). That is, students working for §501(c)(3) tax-exempt organizations are not "employees." *See id.* §651(5)(e); 26 U.S.C. §501(c)(3).

A "student" is "an individual who is enrolled in and regularly attends during the daytime a course of instruction leading to a degree, certificate or diploma, offered at an institution of learning." N.Y. Comp. Codes R. & Regs., Tit. 12, §142-3.12(c)(11); *see* N.Y.S. Department of Labor, *Wage Requirements for Interns*, https://dol.ny.gov/system/files/documents/2023/09/p726-6-22-23.pdf.    Student

performers with Shen Yun (a §501(c)(3) organization, SAC ¶34, SY 990) like Plaintiffs, who attend Fei Tian Academy of the Arts (which confers high school diplomas, SAC ¶35 and *supra* n.2), or Fei Tian College (which awards bachelor's and master's degrees, SAC ¶36 and *supra* n.4), *see also* SAC ¶325, are not "employees" under the NYLL.

    2.   Shen Yun Performers are members of a religious order exempt from NYLL §652.

An individual working "as a member of a religious order" is also not an "employee," under NYLL §651(5)(f). A "religious order" is defined as "a group of persons who are joined together under the authority of a religious leader[] and are dedicated to the performance of religious works." N.Y. Comp. Codes R. & Regs., Tit. 12, §142-3.12(c)(8).

Judicial decisions have interpreted this as encompassing at least the First Amendment's Ministerial Exception. In *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 WL 2206486 (S.D.N.Y. June 1, 2021), this Court dismissed unpaid minimum wage and overtime claims brought by nuns, who argued that they were not members of a religious order because the Greek Orthodox church considered female clergy to be laypersons. *Id.* at *8. Judge Furman declined to draw a formalistic line, holding that the plaintiffs were in fact "members of a religious order" because their primary employment duties (such as singing in Liturgy) were religious in nature. *Id.* The Court's analysis tracked the considerations seen in Ministerial Exception cases. *Compare id.* at *8 *with id.* at *4. *See also Frazier v. FCBC Cmty. Dev. Corp.*, No. 22-CV-5270 (LJL), 2023 WL 2970873 at *3 (S.D.N.Y. Apr. 17, 2023) (noting that the exception for members of a religious order would bar an associate pastor's NYLL claims against his church).

As explained in Section II, as a group of co-religionists who engage in daily religious study and practice and perform with the goal of articulating Falun Gong's principles to audiences with the ultimate goal of "saving people," SAC ¶¶95, 120, 135, 313, Shen Yun dancers and musicians comfortably meet the description of a group "dedicated to the performance of religious works." And

the SAC itself acknowledges that Shen Yun performers are "joined together under the authority of a religious leader," namely Hongzhi Li. *See, e.g.*, SAC ¶38. Accordingly, Plaintiffs are not employees under the NYLL.

### 3.   The Free Exercise Clause Limits the NYLL.

If the student and religious exceptions did not apply, the NYLL claims, like the TVPRA Counts discussed in Sections I and II, *supra*, would be barred by the Free Exercise Clause. The exceptions, if denied to Shen Yun, would render the NYLL not neutral or generally applicable, thus triggering strict scrutiny because a particular religion was excluded from their coverage. *See Fulton v. Philadelphia*, 593 U.S. 522, 534 (2021). And a "government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Id.* at 540, *citing Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). Here, such an interpretation of the NYLL would not satisfy those exacting standards.

### B.   In Any Event, the Bulk of the NYLL Claims are Time-Barred.

Even were the NYLL applicable, most of Plaintiffs' claims (Counts VII-XI, ¶¶569-88) are barred by the applicable six-year Statute of Limitations. NYLL §663(3). Events allegedly occurring before November 25, 2018, are not actionable for Plaintiff Chang, while Plaintiffs added in the SAC cannot maintain NYLL claims predating April 30, 2019.

The SAC provides little information concerning when the vast bulk of the alleged events occurred. Nor are the facts set out in chronological order. But Plaintiff Wang did not perform with Shen Yun after 2017 (SAC ¶424): therefore, all of her NYLL claims are time-barred.

Plaintiffs Chang and Xie left Shen Yun in 2020, SAC ¶¶367, 432, 464. As to them, and Plaintiff Zhu, the SAC is devoid of allegations that, during the relevant period (that is, from November 2018 to early 2020 for Chang, between April 2019 and early 2020 for Xie, and from April 2019 to sometime

"after 2020" (SAC ¶470) for Zhu), any State minimum wage (Count VII), overtime (Count VIII); excessive hours (Count IX); notice (Count X), or payment timing (Count XI) rules were violated.

### C. The NYLL Does Not Apply Outside the State of New York.

The NYLL is not extraterritorial: it does not apply to work performed outside of the State of New York. Shen Yun tours, however, cover the United States and many nations overseas, and all Plaintiffs allege that they were on tour regularly, especially during the later years of their participation in Shen Yun. The SAC makes no allegation that any NYLL violation occurred in New York State during the relevant time periods. "[The] purpose of this area of the labor law is clearly to protect workers laboring in New York. Nothing in the statute suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers." *O'Neill v. Mermaid Touring Inc.*, 968 F.Supp.2d 572, 578-79 (S.D.N.Y. 2013) And "[t]he crucial issue is where the employee is "laboring," not where he or she is domiciled.") (citing *Hammell v. Banque Paribas*, No. 90-Civ.-4799(JSM), 1993 WL 426844, at *1 (S.D.N.Y. Oct. 22, 1993); and *Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 469-70 (S.D.N.Y. 2013)).

### D. Plaintiff Chang's NYLL §215 Retaliation Claim Is Facially Inadequate.

Plaintiff Chang alleges (in Count XII) that Defendants, "using their agents [filed] frivolous lawsuits against [her] in Taiwan." SAC ¶592. She does not identify the "agents," nor does she disclose the allegations (or, for that matter, the current status or outcomes) of the actions. While she does announce as a fact that they are "frivolous," presumably as a matter of Taiwanese law, she offers no basis from which any such inference might be drawn.

"To sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, the plaintiff must allege both that the lawsuit or counterclaim was filed both 'with a retaliatory motive' and that it was filed 'without a reasonable basis in fact or law.'" *Kim v. Lee*, 576 F.Supp.3d 14, 31 (S.D.N.Y. 2021) (quoting *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008)). Neither of those prerequisite

allegations is in the SAC. That failure alone is sufficient grounds for the Court to dismiss this Count. In any event, NYLL §215 applies only to actions by "employers," which none of the Shen Yun Defendants were.

## VI. CLAIMS AGAINST PROFESSOR GONG ARE INSUFFICIENTLY PLEADED.

Virtually all mentions of Defendant Gong (SAC ¶¶370-74) relate to something he allegedly said about Plaintiff Chang in Taiwan and on social media in 2024, years after the facts that are the gravamen of this action. There is not the slightest basis for the claim that he, a history professor at Fei Tian College, himself violated either the NYLL or the TVPRA. As to the NYLL, Plaintiffs do not allege that the professor was their employer, or that they were his employees. Whether Professor Gong's wife sometimes went shopping with Rui Li, SAC ¶542, has little to do with a claim of TVPRA liability of the professor himself. *See Chen*, 2022 WL 917575 at *5 (S.D.N.Y. Mar. 28, 2022). Ultimately, the only basis the Complaint provides for distinguishing him from any other staff member is that he engaged in First Amendment-protected speech. The claims against him should be dismissed.

## VII.   PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE RELIEF.

Finally, the Court lacks jurisdiction to grant the declaratory and/or injunctive relief that Plaintiffs request in the last paragraph of each Count of the Complaint. "Plaintiffs must separately establish standing for each form of relief sought," *Soule v. Connecticut Ass'n of Schools, Inc.*, 90 F.4th 34, 47 (2d Cir. 2023). "[A] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555, 564 (S.D.N.Y. 2016) (same standard applies in purported class actions. No Plaintiff is a current student or Shen Yun performer. SAC ¶¶367, 427, 467, 470. There is no future injury with which they are threatened. Accordingly, they have no standing to seek those remedies, and the claims for an

injunction or declaratory judgment should be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1). *See Doe 1 v. Apple Inc.*, 96 F.4th 403, 414 (D.C. Cir. 2024).

## CONCLUSION

For these reasons, the Second Amended Complaint should be dismissed under FRCP 12(b)(1) and (6), with prejudice and in its entirety.

Respectfully submitted,

*Steven M. Schneebaum*

_____
Steven M. Schneebaum*
Steven M. Schneebaum PC
1750 K Street NW #1210
Washington, DC 20006
sms@smslawdc.com
Telephone: (202) 742-5900

Justin E. Butterfield*
Lea E. Patterson*
Butterfield & Patterson, PLLC
P.O. Box 941681
Plano, Texas 75094
justin@butterfieldpatterson.com
lea@butterfieldpatterson.com
Telephone: (945) 284-0700

Terri Marsh*
Executive Director
Human Rights Law Foundation
1333 New Hampshire Ave. NW.
Suite 204
Washington, DC 20036
terri.marsh.hrlf@gmail.com
Telephone: (202) 774-0893

Counsel for Defendants Shen Yun Performing Arts, Inc., Fei Tian College, Fei Tian Academy of the Arts, Dragon Springs Buddhist Inc., Shujia Gong, Hongzhi Li, and Rui Li.

*Admitted pro hac vice.*

Dated: July 30, 2025

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum of law complies with the length requirements of Southern District of New York Local Civil Rule 7.1(c), because it contains 8,741 words.


*Steven M. Schneebaum*

_____

Steven M. Schneebaum


Dated: July 30, 2025