UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHUN-KO CHANG, et al.,

Plaintiffs,

-against-

SHEN YUN PERFORMING ARTS, INC., et al.,

Defendants.

**OPINION AND ORDER**

24-CV-08980 (PMH)

PHILIP M. HALPERN, United States District Judge:

Chun-Ko Chang, Yi Ran Wang, Guanee Xie, and Hofmann Zhu ("Plaintiffs") commenced this putative class action bringing claims under provisions of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 *et seq*., and the New York Labor Law ("NYLL"). (*See* Doc. 91, "SAC"). Defendants Shen Yun Performing Arts, Inc. ("Shen Yun"), Fei Tian College, Fei Tian Academy of the Arts, Dragon Springs Buddhist, Inc. ("Dragon Springs"), Hongzhi Li, and Rui Li a/k/a Sandy Rebecca Lee ("Rui Li," and collectively, the "Shen Yun Defendants"), and Shujia Gong a/k/a Tianliang Zhang ("Zhang," and together with the Shen Yun Defendants, "SYZ Defendants"), move under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the claims asserted against them. (Doc. 100; Doc. 100-1, "SYZ Def. Br."; Doc. 100-2; Doc. 100-7, "SYZ Def. Reply").[1] Defendant International Bank of Chicago ("IBC Defendant") moves to dismiss separately under Federal Rule of Civil Procedure 12(b)(6). (Doc. 101; Doc. 101-1, "IBC Def. Br."; Doc. 101-2, "IBC Def. Reply"). Plaintiffs, as directed by the

[1] SYZ Defendants filed an "appendix" to their Reply brief. (Doc. 100-8, "Reply Appendix"). Plaintiffs moved by letter motion to strike the nine-page Reply Appendix on multiple grounds, including that Plaintiffs filed the document as an improper "end-run around" the word-count limit rule, and request that it be stricken from the docket. (Doc. 104). The Court agrees. The Reply Appendix plainly incorporates argumentative language throughout the additional pages that serves to extend SYZ Defendants' reply beyond the allowable limit. (*See, e.g.*, Reply Appendix at 1 ("Collected Cases, Executive Branch Determinations, that Falun Gong Constitutes a Religion")). The Clerk of Court is respectfully requested to strike Doc. 100-8 from the docket but retain the summary docket text for the record.

Court, filed an omnibus brief in opposition to Defendants' respective motions (Doc. 100-6, "Pl. Br."). Both motions are the subject of the instant opinion.[2]

For the reasons set forth below, SYZ Defendants' motion to dismiss is GRANTED in part and DENIED in part, and IBC Defendant's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

The Court, for purposes of deciding the pending motion, accepts as true the well-pled factual allegations in the SAC and draws all reasonable inferences in Plaintiffs' favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Shen Yun identifies itself as a nonprofit dance company devoted to highlighting Chinese culture and morality while exposing the "cruelty of the Chinese Communist Party." (SAC ¶ 1). Shen Yun recruits children as students to work as dancers and musicians for Shen Yun ("Performers"), many of which are recruited from abroad. (*Id.* ¶ 2). From the start of their time at Shen Yun as students, many Performers are recruited to attend the Fei Tian Academy of the Arts or Fei Tian College, which Plaintiffs allege "operate[s] as a cover for the forced labor scheme." (*Id.* ¶ 7). This alleged "forced labor scheme," is used to achieve the overarching goal of the Shen Yun Defendants, *i.e.*, "performing uncompensated or undercompensated labor as Performers in Shen Yun performances, so that Defendants may reap massive financial benefits." (*Id.* ¶ 9).

Fei Tian Academy of the Arts is a nonprofit secondary school, serving grades six through twelve, and is based in Cuddebackville, New York. (*Id.* ¶ 35). Fei Tian College is a nonprofit

[2] Plaintiffs, on March 6, 2026, filed a letter concerning "recent supplemental authority" (*see* Doc. 107), which both IBC Defendant and SYZ Defendants responded to on March 9 and 12, 2026, respectively (*see* Docs. 108, 109). Plaintiffs then filed an additional letter, on June 5, 2026, summarizing a "parallel action before Judge Clarke" (*see* Doc. 110), which SYZ Defendants responded to on June 10, 2026 (*see* Doc. 111). The Court considers each of the Parties' respective letters, to the extent consistent with their papers.

college based in New York that offers "baccalaureate and Hongzhi Li's programs in Music and Classical Chinese Dance." (*Id.* ¶ 36). Dragon Springs is a nonprofit organization with headquarters in Cuddebackville, New York. (Id. ¶ 37). As alleged, each of the above entities assists in generating revenue from the Shen Yun performances each year, as Fei Tian Academy "lures minors to become Performers," Fei Tian College "lures those minors into staying into early adulthood," and Dragon Springs "houses all these entities, the individual Defendants, and the Performers under one roof." (*Id.* ¶ 43).

Hongzhi Li founded and leads Falun Gong, which is a "practice that combines teachings for self-improvement and mediation exercises," though he has asserted that Falung Gong is not a religion. (*Id.* ¶ 3). Rui Lee is Hongzhi Li's wife, and together, the Lis are alleged to "effectively control Shen Yun's considerable assets, and personally and secretly benefit from that control by living a life of privilege via arrangements that obscure their beneficial ownership, all the while espousing to Performers the importance of sacrificing their material desires and well-being in order to make Shen Yun possible." (*Id.* ¶ 13). Performers, Plaintiffs included, labor for Shen Yun and the Lis for little to no compensation because they "reasonably believe that disobeying Hongzhi Li's directives to perform for Shen Yun will result in grave harm to themselves and their families." (*Id.* ¶ 14).

Through the requirement that Shen Yun Performers live at the Dragon Springs compound, Shen Yun Defendants control virtually every aspect of the Performers' lives, including but not limited to the following: Performers are not permitted to leave the Dragon Springs compound in New York without Shen Yun Defendants' permission, as armed guards and German Shepherds patrol the perimeter (*id.* ¶¶ 15, 166-168); Performers' passports and immigration documents are confiscated and held upon arrival (*id.* ¶¶ 15, 162-164, 226, 566); access to the internet and smart

phones is restricted, with Performers being prohibited from "consuming unapproved media" (*id.* ¶¶ 15, 123, 179, 181-189); Performers are deprived of necessary medical care, routinely performing while severely injured, underweight, and malnourished (*id.* ¶¶ 16, 190-208); and Performers' family and romantic relationships are controlled while at Dragon Springs and performing for Shen Yun (*id.* ¶¶ 16, 216-222).

Additionally, Performers' access to finances are tightly controlled, and Performers are required to open an account with IBC Defendant, with underage Performers required to utilize a Shen Yun agent as their custodian. (*Id.* ¶¶ 223-230, 261-265). IBC Defendant is a bank organized under the laws of Illinois, with six branches, and the branch at issue here, which services the Shen Yun Defendants, is located in Port Jervis, New York. (*Id.* ¶¶ 45, 253). The founders of IBC Defendant are both Falun Gong practitioners, and have a close relationship with the Lis. (*Id.* ¶¶ 276-279). The branch in New York is located approximately 15 minutes from Dragon Springs, and the IBC Defendant's CEO alleged that the "bank's target market includes . . . Chinese performance artists in the region," and specifically, "members of the Shen Yun Performing Arts." (*Id.* ¶ 254). IBC Defendant had access to the Dragon Springs compound and sent representatives inside multiple times a year for more than a decade to sign up new Performers for accounts at the bank. (*Id.* ¶¶ 255-256). One such representative was Lina Wu, who, in addition to working at the Port Jervis branch of IBC Defendant, also worked at Dragon Springs in hairdressing and costume department roles. (*Id.* ¶¶ 257-258). Qing, the "unpaid bookkeeper of the Shen Yun Defendants and a top aide to Hongzhi Li and Rui Li," served as the custodian for all underage Performers at Dragon Springs, as directed by representatives of Shen Yun. (*Id.* ¶¶ 259, 261-263).

In the event any Performers fail to abide by the strict rules of control set forth by Shen Yun Defendants, Performers may be subject to "mass criticism sessions," where they are berated on

stage by their peers and the Lis, publicly humiliated, and forced to apologize for their alleged transgressions, often taking place in front of crowds of upwards of 100 individuals. (*Id.* ¶¶ 19, 202, 209-215).

Each of the Plaintiffs' specific allegations detail similar narratives as those set forth above, as follows.

Plaintiff Wang

Wang auditioned for Shen Yun in 2008 at or about the age of 13, and was selected upon auditioning at Dragon Springs in New York. (*Id.* ¶¶ 382, 384). At that time, Wang immediately began working, rehearsing, and training for Shen Yun, and was told she would receive a full scholarship as a student at Fei Tian Academy of the Arts. (*Id.* ¶¶ 385-386). Upon arrival, Wang's passport and immigration documents were confiscated from her, and she understood that she could not leave Dragon Springs without express permission, even after she became an adult. (*Id.* ¶¶ 387-388). Wang understood this based on conversations with Rui Li directly, from Siu Qing, an administrator working for the Lis ("Qing"), and from her observation of the armed guards, gates, and German Shepherds surrounding the perimeter of Dragon Springs. (*Id.* ¶ 388).

Wang performed as a dancer between approximately 2009 through 2017, and throughout this time was restricted from seeing her family, accessing her finances, free usage of the internet, and frequently worked from approximately 13 to 16 hours a day, receiving little to no pay. (*Id.* ¶¶ 390-408, 412-421). Wang, despite sustaining many injuries, never received medical care, including preventative care or an annual doctor's checkup. (*Id.* ¶¶ 409-411). Wang witnessed many mass criticism sessions, and by 2017, suffered from severe depression sufficient to force her to leave, which she was finally allowed to do after "several hours trying to convince" Hongzhi Li to give her permission to leave. (*Id.* ¶¶ 424-430).

Plaintiff Xie

Xie auditioned for Shen Yun and began working as a musician on September 26, 2012, when he was 15 years old. (*Id.* ¶¶ 432-435). Xie was accepted as a student at Fei Tian Academy of the Arts and was told he would receive a full scholarship. (*Id.* ¶ 436). Upon arrival, Xie's passport and immigration documents were confiscated from him, and he understood that he could not leave Dragon Springs without express permission, even when he became an adult. (*Id.* ¶¶ 437-438). Xie was only allowed his passport when he travelled on tour, and upon returning, was required to turn his passport back to Shen Yun. (*Id.*). Xie understood that he could not leave Dragon Springs from his observation of the armed guards, gates, and German Shepherds surrounding the perimeter of Dragon Springs. (*Id.* ¶ 438). Xie was told by Qing that he was not allowed to have platonic or romantic relationships with anyone of the opposite sex, not allowed to have smart phones or social media, and was required to disconnect from any individuals from his "pre-Shen Yun" life. (*Id.* ¶¶ 438-440).

Xie began touring and performed as a musician in 2013, and worked for approximately one hundred shows or more all over the United States and internationally, though he spent his first year rehearsing and practicing the cello at Dragon Springs. (*Id.* ¶¶ 442-443). Xie felt that he had to continue performing with Shen Yun despite the requirement that he work for 13 to 16 hours each day, and despite his receiving little to no income. (*Id.* ¶¶ 452-462). Xie decided to leave Shen Yun at 23 years of age, as despite fearing significant harm upon leaving, he understood he would be forced to marry another Shen Yun performer and that staying was too detrimental to his "personal life and professional prospects." (*Id.* ¶¶ 464-466). Upon leaving, Rui Li threatened Xie that if he left he would have to repay six years of tuition for which had allegedly received a scholarship. (*Id.*

¶ 467). Xie was, however, allowed to leave, but only after six hours of emotional discussion with Rui Li. (*Id.* ¶¶ 468-469).

Plaintiff Zhu

Zhu was a musician at Shen Yun for 11 years, beginning when he was 15 years old. (*Id.* ¶ 470). While Zhu thought he was attending a legitimate educational institution, and was accepted as a student with a full scholarship at Fei Tian Academy of the Arts, Zhu quickly realized that such education was a "substandard pretext for obtaining his labor for nearly nothing in service of the Shen Yun Defendants' lucrative commercial enterprise." (*Id.* ¶¶ 472-474). Zhu's passport was confiscated upon arrival at Dragon Springs, and was kept by Shen Yun Defendants even upon Zhu's turning 18 years old. (*Id.* ¶ 475). Zhu understood he could not leave the campus, for the same reasons as Xie and Wang, received a similarly incomplete and insufficient education while at Fei Tian Academy of the Arts, and was similarly restricted as to his relationships, financials, and internet usage. (*Id.* ¶¶ 476-492).

Zhu decided to leave Dragon Springs in his early 20s, and despite his fear of significant harm upon leaving, he felt it was impossible to continue working at Shen Yun considering the conditions he was forced to endure. (*Id.* ¶ 503). Zhu was pressured to stay by various Shen Yun individuals, though he was eventually allowed to leave, with Rui Li threatening him that he'd better not "dare go out and speak poorly against us." (*Id.* ¶¶ 504-505).

Plaintiff Chang

Chang auditioned as a dancer for Shen Yun in or about 2007, but was not selected until she re-auditioned in September 2009. (*Id.* ¶¶ 305-311). Chang was told that she would be accepted at Fei Tian Academy of the Arts and would receive a full scholarship, which was particularly appealing because Chang's father passed away when she was 11 and she felt dancing for Shen

Yun would "help her family." (*Id.* ¶¶ 312, 315-316). Chang's passport was confiscated upon arrival at Dragon Springs, and Chang was told that she could never leave the Dragon Springs compound except upon permission of Hongzhi Li or Rui Li. (*Id.* ¶¶ 317-319). Chang, while performing as a dancer for Shen Yun, earned a maximum of $1,000 per month, and while her offer letter stated this included 25 hours of work per week, Chang worked approximately 90 hours per week. (*Id.* ¶¶ 321-326). Chang's access to her finances was severely restricted, as she was not allowed to go to an ATM without being accompanied. (*Id.* ¶ 327). Like the other Plaintiffs, Chang's internet access, social media use, familial and intimate relationships, and medical access were severely restricted, if not denied entirely. (*Id.* ¶¶ 335-352). Specifically, Chang was only allowed to contact her mother once a week and visit her once a year, did not have health insurance, and was told that she needed to "pray to feel better" instead of being taken to a medical doctor for serious injuries and sickness. (Id. ¶¶ 337, 347-349). Chang experienced injuries, such as a foot arch injury and a face injury after being hit with a metal rod during a performance, as well as the measles. (Id. ¶¶ 349-351). Chang only went to the dentist once during her experience with Shen Yun, and only for cosmetic reasons. (*Id.* ¶ 352). Chang was also publicly shamed during mass criticism sessions for failure to keep her weight below 115 pounds. (*Id.* ¶¶ 356-364).

Chang was terminated from Shen Yun in 2020 when she was 24 years old and sent back to Taiwan. (*Id.* ¶ 367). Chang, in the aftermath of her termination, took part in a New York Times interview and the Shen Yun Defendants and Defendant Zhang proceeded to engage in an alleged retaliatory campaign against Chang which included alleged defamatory statements and the filing of apparently frivolous lawsuits against her in Taiwan. (*Id.* ¶¶ 368-381).

This litigation followed.

## STANDARD OF REVIEW

I. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[3] "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II. Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Plaintiffs press all claims for relief against each of the Shen Yun Defendants. (SAC at 103-114). As against Zhang and IBC Defendant, Plaintiffs press only Claims Two and Four under the TVPRA (Beneficiary Liability and Conspiracy). (*Id.* at 104-106, 107-108). SYZ Defendants move to dismiss the SAC in its entirety as against them, based on a combination of procedural grounds, affirmative defenses, and on the merits. IBC Defendant moves to dismiss the SAC in its entirety as against them on the merits. First, the Court will consider the affirmative defenses and procedural grounds. Then the Court will consider the merits of Defendants' 12(b)(6) motions.

I. Rule 12(b)(1) Lack of Standing: Declaratory and Prospective Injunctive Relief

Plaintiffs, in the wherefore clause of the SAC, seek: (i) a "[d]eclar[ation] that all Defendants committed violations of the TVPRA"; (ii) "injunctive relief requiring Defendants to cease violations of the TVPRA and prohibiting violations in the future"; and (iii) a "[d]eclar[ation] that Defendants committed violations of the NYLL." (SAC at 114). Plaintiffs include similar requests for prospective injunctive relief specifically as to the TVPRA Claims for Relief. (*Id.* ¶¶ 534, 546, 551, 558, 563, 568). SYZ Defendants argue that these allegations are insufficient to establish standing and thus any "claims for an injunction or declaratory judgment should be dismissed under Rule 12(b)(1)." (SYZ Def. Br. at 25-26).

Plaintiffs request injunctive relief as a statutory remedy under the TVPRA. Plaintiffs are not entitled to such relief. The Court will analyze the Plaintiffs' equitable requests, *seriatim*.

A. Federal and Statutory TVPRA Injunctive Relief

Plaintiffs seek "preliminary and permanent injunctive relief" as a remedy for the TVPRA violations pled in the Second Amended Complaint.[4]

The TVPRA allows any "individual who is a victim" to "recover damages and reasonable attorneys fees." *See Moore v. Rubin*, 160 F.4th 271, 299 (2d Cir. 2025) (citing 18 U.S.C. § 1595(a)). As to injunctive relief, however, 18 U.S.C. § 1595A(a) informs that "[w]henever it shall

---

[4] To the extent Plaintiffs do not demand injunctive relief in the wherefore clause as a statutory remedy, the Court notes there is no other independent claim for relief pled in the Second Amended Complaint that would afford them such a remedy. Accordingly, even if the Court were to construe Plaintiffs' requested injunctive relief as a cause of action for a permanent injunction under New York state law, such a cause of action would fail as Plaintiff pleads no other substantive violations that the Court may properly enjoin and Plaintiffs have an adequate remedy at law to redress the violations pled, namely, damages under the TVPRA. *See Staver Co., Inc. v. Skrobisch*, 144 A.D.2d 449, 450 (N.Y. App. Div., 2d Dep't 1988) (holding that the permanent injunction cause of action allegations as pled were insufficient to survive defendant's motion to dismiss, as plaintiff could pursue a separate action for damages); *see also Elow v. Svenningsen*, 58 A.D.3d 674, 675 (N.Y. App. Div., 2d Dep't 2009) (holding that plaintiff's cause of action for a permanent injunction to enjoin obstruction of plaintiff's easement sufficiently pled a cause of action where, *inter alia*, there existed a "violation of a right presently occurring, or threatened and imminent . . . that the plaintiff ha[d] no adequate remedy at law" therefor).

appear that any person is engaged or is about to engage in any act that constitutes or will constitute a violation" of the TVPRA, the "Attorney General may bring a civil action in a district court of the United States seeking an order to enjoin such act." 18 U.S.C. § 1595A(a).

Accordingly, looking at the plain language of the statute, and considering well-settled canons of statutory construction, only the "Attorney General," not "any individual who is a victim," *i.e.*, Plaintiffs, may properly request injunctive relief under these provisions of the TVPRA. *See N.Y.S. Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 71-72 (N.D.N.Y. 2020) (utilizing the plain language of the TVPRA and the principle of statutory construction, "*expressio unius est exclusion alterius*," to determine that because the statute does not "explicitly list a union representative as a party that can seek a civil remedy," then a union representative may not, as "anyone not expressly permitted to bring a cause of action under the TVP[R]A cannot bring a civil suit to recover for violations of it.").

Separately, even assuming *arguendo*, that Plaintiffs could press their TVPRA claims for an injunctive remedy, it is also undisputed that Plaintiffs are no longer students or Shen Yun performers. (*See* SAC ¶¶ 30-33, 367, 424-428, 466-468, 470). Despite this fact, Plaintiffs argue that prospective injunctive relief is properly pled, at least as to Plaintiffs Chang and Zhu, relying upon speculative assertions of ongoing and future retaliation affecting non-party current performers. (Pl. Br. at 35). However, speculation of possible future injury is insufficient to confer standing here, especially in light of the fact that Plaintiffs' TVPRA claims are entirely rooted in "past practices and past injustices." *Blamah v. New York*, No. 19-CV-09234, 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020) (dismissing requests for declaratory and injunctive relief where "[e]ach of [p]laintiff's claims of relief speak only to past practices and alleged past injustices," and "nowhere in [p]laintiff's complaint does she make reference to the elements of an injunctive or

declaratory claim for relief."); *see also Russo v. City of New York*, No. 02-CV-00369, 2003 WL 1571707, at *1 (S.D.N.Y. Mar. 26, 2003). Even if Plaintiffs were able to request injunctive relief under the TVPRA, the allegations made in relation thereto are insufficient to support the relief sought.

Plaintiffs' claims of entitlement under the TVPRA to injunctive relief, to the extent pled, are thus dismissed.

B. <u>Declaratory Judgment Relief</u>

As to Plaintiffs' requests for declaratory judgment relief, it is well-settled that "the law does not recognize a declaratory judgment claim for relief," as a "declaratory judgment is a remedy, not a cause of action." *Nortek Inc. v. ITT LLC*, No. 21-CV-03999, 2025 WL 588226, at *7 (S.D.N.Y. Feb. 24, 2025) (citing *Abraham v. Town of Huntington*, No. 17-CV-03616, 2018 WL 2304779, at *14 (E.D.N.Y. May 21, 2018)). In any event, Plaintiffs' requests for a "[d]eclar[ation] that all Defendants committed violations of the TVPRA" and a "[d]eclar[ation] that Defendants committed violations of the NYLL," are unnecessary and duplicative of the relief sought under each respective statute.

In other words, any declaratory judgment claims are unnecessary, as any relief that would have been sought under the purported declaratory judgment claims will be subsumed in the resolution of the TVPRA and NYLL money damage claims. *See Skanska USA Building Inc. v. Regeneron Pharmaceuticals Inc.*, No. 23-CV-08418, 2024 WL 3274731, at *3 (S.D.N.Y. July 1, 2024). Plaintiffs fail to identify any separate allegations concerning the TVPRA and NYLL claims which warrant declaratory judgment relief. (*Compare* SAC at 114 *with id.* at 103-113). Plaintiffs' claims for declaratory judgment relief are thus dismissed.

Accordingly, Plaintiffs' requests for declaratory and prospective injunctive relief are denied.

II. Rule 8: Impermissible "Group Pleading"

SYZ Defendants argue that Plaintiffs impermissibly bundled and made "undifferentiated claims" against the Shen Yun Defendants as a whole, without clarifying what each individual defendant was alleged to have done, seeking dismissal of all claims as a result. (SYZ Def. Br. at 14-17). However, it is well-settled that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants," especially where the "complaint alerts defendants that identical claims are asserted against each defendant." *See Feldman v. Comp Trading, LLC*, No. 19-CV-04452, 2021 WL 930222, at *3-4 (E.D.N.Y. Mar. 11, 2021); *see also Gomez-Kadawid v. Lee*, No. 20-CV-01786, 2022 WL 676096, at *7 (S.D.N.Y. Feb. 3, 2022) ("a motion to dismiss for group pleading may fail when, 'even though the plaintiff refers to defendants generally rather than a particular defendant individually, it is sufficiently clear that in the particular factual context of [the] case . . . the complaint furnishes adequate notice for initial pleading purposes of plaintiff's claim of wrongdoing.'"). Instead, "[t]he question is ultimately whether the complaint gives each party 'notice of the substance of the claims against [them].'" *Feldman*, 2021 WL 930222, at *3 (citing *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-CV-08916, 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015)).

Under the circumstances presented, Plaintiffs have plainly given each of the SYZ Defendants fair notice of the "substance of the claims against them," to satisfy Rule 8's liberal pleading requirements. (*See, e.g.*, SAC at 103-113). SYZ Defendants' motion based on alleged impermissible "group pleading" is denied.

III. The Ministerial Exception Affirmative Defense

SYZ Defendants argue that the ministerial exception applies to this matter and accordingly bars Plaintiffs' claims in their entirety, as Plaintiffs are "ministers" of the "religious organization" of Shen Yun. (SYZ Def. Br. at 10-13; SYZ Reply at 1-4). Plaintiffs argue in response that the ministerial exception does not apply to the claims for relief at issue in this case, and even if it did, SYZ Defendants failed to carry their burden of proof to allow the Court to rule on this affirmative defense at this juncture. (Pl. Br. at 19-26).

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Supreme Court, in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188, (2012), applying and interpreting this provision, created a quasi "ministerial exception," holding that these Clauses "flatly bar" certain claims brought by "ministers against the religious groups that employ or formerly employed them," *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-03809, 2023 WL 2185827, at *8 (S.D.N.Y. Feb. 23, 2023) (citing *Fratello v. Roman Catholic Archdiocese of N.Y.*, 863 F.3d 190, 202-03 (2d Cir. July 14, 2017)). To successfully invoke the ministerial exception, a defendant must prove that a plaintiff "(1) worked for a 'religious institution' (2) as a 'minister.'" *Id.* (citing *Hosanna-Tabor*, 565 U.S. at 188-89). This inquiry is fact-intensive and flexible, and as to whether an employee can be considered a "minister," "[w]hat matters, at bottom, is what an employee does." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 753 (2020). The ministerial exception was created to protect the "interest of religious groups in choosing who will preach their beliefs, teach their faith, and carry out their mission." *Hosanna-Tabor*, 565 U.S. at 196.

As an initial matter, the "ministerial exception" is an affirmative defense, and as with any affirmative defense, a court may only dismiss based upon this defense if "its factual predicates clearly appear on the face of the complaint." *Davenport v. Episcopal Health Servs., Inc.*, 819 F. Supp. 3d 194, 202 (E.D.N.Y. Feb. 5, 2026) (citing *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995)). Further, SYZ Defendants "bear the burden of establishing [its] applicability," and the Court is mindful that "[o]nly where the facts as alleged in the complaint definitively resolve the question [of the applicability of the ministerial exception] should courts decide the issue at the motion to dismiss stage." *Stabler v. Congregation Emanu-El of the City of New York*, No. 16-CV-09601, 2017 WL 3268201, at *5-6 (E.D.N.Y. July 28, 2017) (citing *Fratello v. Roman Catholic Archdiocese of N.Y.*, 175 F. Supp. 3d 152, 161 (S.D.N.Y. 2016), *aff'd, Fratello*, 863 F.3d at 192).

Here, assuming, without holding, that the ministerial exception applies to Plaintiffs' TVPRA and NYLL claims,[5] the face of the SAC nevertheless does not "definitively resolve" whether Plaintiffs in this matter can properly be considered "ministers," or whether Shen Yun qualifies as a "religious organization." Based on the SAC, and accepting Plaintiffs' allegations as true as is required of the Court at this stage, Plaintiffs consider themselves to be "Performers," *i.e.*, dancers and musicians for Shen Yun tours. (SAC ¶¶ 2, 25, 285). SYZ Defendants attempt to argue that these "Performers" are "ministers" because that term "includes anyone who communicates a religious message on behalf of a faith-based organization." (SYZ Def. Br. at 11). However, the Court may not, at the motion to dismiss stage, engage in such a factual analysis where, as here, it

[5] The Court need not, and does not analyze whether the ministerial exception applies to Plaintiffs' TVPRA and NYLL claims at the motion to dismiss stage, as fact-issues remain concerning whether Plaintiffs can be properly termed "ministers," and whether Shen Yun qualifies as a "religious organization." However, the Court notes that Judge Clarke recently held in a similar case that the plaintiffs' TVPRA claims were not barred by the ministerial exception as, *inter alia*, they do not "implicate the matters of faith and doctrine or matters of internal government integral" thereto. *See Sun v. Shen Yun Performing Arts, Inc.*, No. 25-CV-03185, 2026 WL 1382896, at *14 (S.D.N.Y. May 18, 2026). This Court declines to rule on this issue at this time.

is not clear from the four corners of the SAC that Plaintiffs "clearly" fall into the category of "ministers," or for that matter, whether Shen Yun "clearly" qualifies as a "religious organization." *See Stabler*, 2017 WL 3268201, at *7 (declining to grant defendants' motions to dismiss because the allegations in the amended complaint did not provide a "clear-cut answer to whether the ministerial exception" applied). Development of the record is required for adequate answers to these fact-intensive questions, and the Court declines to hold one way or another whether the ministerial exception applies to the claims in this case.

Accordingly, SYZ Defendants' motion to dismiss is denied on the affirmative defense of the ministerial exception.[6]

IV. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

A. Plaintiffs' TVPRA Claims for Relief (Claims I – VI)

Plaintiffs' first through sixth claims for relief are brought for violations of the TVPRA against Defendants under the following theories: i) direct liability for forced labor and trafficking (Claims I and III, against Shen Yun Defendants); ii) beneficiary liability (Claim II, against all Defendants); iii) conspiracy and attempt (Claim IV, against all Defendants, and Claim V, against Shen Yun Defendants); and iv) seizure of documents (Claim VI, against Shen Yun Defendants). (SAC at 103-110). The TVPRA creates a civil cause of action for victims of violation of the statute's criminal provisions. 18 U.S.C. § 1595; *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012). "An individual who is a victim of a violation of this chapter may bring a civil action against the

[6] To the extent SYZ Defendants also separately argue that any Free Exercise Clause and/or Religious Freedom Restoration Act affirmative defense, as "incorporated in the broader Ministerial Exception and TVPRA arguments" as well as NYLL arguments, operates in any way to bar Plaintiffs' claims (*see* SYZ Reply at 3; SYZ Def. Br. at 9-10, 23; *see also* 42 U.S.C. § 2000bb-1(a)), the Court declines to rule on these affirmative defenses at this stage, as Defendants have failed to carry their burden to show that either of the affirmative defenses' "factual predicates clearly appear on the face of the [SAC]." *See Davenport*, 819 F. Supp. 3d at 202.

perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter).” 18 U.S.C. § 1595(a).

i. Direct Liability: Forced Labor (Claim I) and Trafficking (Claim III)

The TVPRA imposes civil liability on a person who obtains labor through force. 18 U.S.C. § 1589. “Forced labor” as defined by the statute, includes coercion through “force, threats of force, . . . serious harm or threats of serious harm . . . or . . . any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm” such that “a reasonable person of the same background and in the same circumstances” as the victim would be coerced “to perform or to continue performing labor or services in order to avoid incurring that harm.” *Id.*; *Taylor v. Children’s Village*, No. 20-CV-10997, 2021 WL 1581568, at *4 (S.D.N.Y. Apr. 21, 2021).

Plaintiffs press their claim of forced labor against Shen Yun Defendants under 18 U.S.C. § 1589(a), which imposes liability on anyone who “knowingly provides or obtains the labor or services of a person . . . by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person”; “by means of serious harm or threats of serious harm to that person or another person”; or “by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.” *Id.* at § 1589(a) (1), (2), (4).

Shen Yun Defendants argue only that Plaintiffs fail to plausibly allege “serious harm.” (*See* SYZ Def. Br. at 5-10). The TVPRA defines “serious harm” as “any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background

and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589 (c)(2). "When considering whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will, the Court must also 'consider the particular vulnerabilities of a person in the victim's position.'" *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 705 (S.D.N.Y. 2022) (quoting *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-CV-01422, 2021 WL 7186030, at *7 (E.D.N.Y. Apr. 30, 2021)).

Plaintiffs' allegations, at this stage and taking them as true for purposes of this motion, plausibly indicate "serious harm" sufficient to plead forced labor under § 1589 of the TVPRA. According to the SAC: "Defendants kept Plaintiffs . . . working under inhumane conditions by preying on their vulnerability as children and reliance on Defendants for food, housing, and by withholding wages for hours worked" (SAC ¶ 531); "Plaintiffs were forced to work as Shen Yun Performers from when they were minors until their mid-20s . . . [and suffered] damages . . . as a result of Defendants' scheme to force them to labor under threat of serious harm and without pay . . . including the systemic practice of coercing children into forced labor for Defendants' commercial benefit" (*id.* ¶ 26); and Plaintiffs were "trapped in a compound patrolled by armed guards and German Shepherds," which "instill[ed] in each Performer, and in each Plaintiff, the fear of serious harm to themselves, their families, their reputations, and their livelihoods" (*id.* ¶ 304). Additionally, Plaintiffs allege that they were "subjected to group criticism and face[d] grave reputation harm," through "mass criticism sessions . . . where well over 100 people" gathered to publicly criticize individuals who among other reasons: i) left Shen Yun; ii) did not meet weight goals; iii) attempted to leave the Dragon Springs campus without explicit permission; or iv)

generally failed to follow any of the "rules" governing "life under the auspices of Shen Yun." (*See, e.g.*, *id.* ¶¶ 19, 20, 166-167, 202, 209-213, 335, 361-365, 421-422, 467-468).

Despite Shen Yun Defendants' arguments that Plaintiffs' allegations were simply akin to "those for students competing at a high level in sports, gymnastics, or ballet" (SYZ Def. Br. 8), it is plain that the above allegations, at least at the motion to dismiss stage, are more than sufficient to demonstrate "psychological, financial, or reputational harm," and thus satisfy the definition of "serious harm" under the TVPRA.

Because Plaintiffs' allegations sufficiently transformed their TVPRA forced labor claim "from conceivable to plausible," *Twombly*, 550 U.S. at 570, the first claim for relief under the TVPRA remains. Additionally, as Plaintiffs have sufficiently stated a claim for relief for forced labor under Section 1589, Plaintiffs' claim under Section 1590(a) for trafficking in violation of the TVPRA similarly survives SYZ Defendants' motion to dismiss. *See Sun*, 2026 WL 1382896, at *16 ("[W]hen a defendant violates Section 1589, he also violates Section 1590 if he recruited the person to perform forced labor." (citation modified) (quoting *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019)).

Accordingly, SYZ Defendants' motion to dismiss is denied as to Claims I and III.

ii. <u>Beneficiary Liability (Claim II)</u>

Defendants argue that Plaintiffs' allegations concerning beneficiary liability pursuant to 18 U.S.C. § 1589(b) fail as pled. (SYZ Def. Br. at 19, 25; IBC Def. Br. at 5-10). The Court disagrees.

The TVPRA imposes liability under 18 U.S.C. § 1589(b) on anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589(a)]." This section further requires that the defendant must "know[] or [be] in reckless

disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." 18 U.S.C. § 1589(b). Thus, to adequately plead a claim for relief under 1589(b), Plaintiffs must plead: "[i] that the defendant knowingly benefited or received anything of value [ii] from participation in a venture, [iii] which [the beneficiary] knew or should have known has engaged in an act in violation of [Section 1589]." *Khatskevich v. Shapiro*, No. 23-CV-09160, 2025 WL 833872, at *10 (S.D.N.Y. Mar. 17, 2025). Further, "participation in a venture," for the purposes of this analysis, is understood to "require a showing that the defendant took part in an enterprise or undertaking that involved elements of risk, potential gain, or both." *Mueller v. Deutsche Bank Aktiengesellschaft*, No. 25-1162, 2026 WL 2220472, at *4 (2d Cir. Aug. 3, 2026); see also *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023).

1. Shen Yun Defendants

Plaintiffs have adequately pled a § 1589(b) claim against the Shen Yun Defendants. Specifically, Plaintiffs claim that the Shen Yun Defendants, through their forced labor scheme in violation of §1589, benefitted financially, and knew or should have known of the alleged § 1589 violations. (SAC ¶¶ 12, 13, 47, 88-90, 395, 540-541). This is sufficient to sustain a claim of beneficiary liability under § 1589(b), especially considering the Court's holding as to the Shen Yun Defendants' liability at this stage under § 1589(a). *See Sun*, 2026 WL 1382896, at *17; *see also Paguirigan v. Prompt Nursing Emp. Agency, LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017).

2. Defendant Zhang

Similarly, Plaintiffs have alleged enough to sustain liability against Defendant Zhang at this stage. Plaintiffs claim that Zhang is a teacher and agent/employee of Shen Yun, Fei Tian Academy and Fei Tian College, as well as a public relations spokesperson who assisted in

"publicly retaliat[ing] against and intimidat[ing] those [Performers] who speak out against Shen Yun. (SAC ¶ 44). Plaintiffs allege that Zhang is also the founder of a nonprofit that had "over $1 million in revenues, most (if not all) of which was from Shen Yun or Falun Gong related activities." (*Id.*). As a result of the above, Plaintiffs claim that Zhang knowingly benefitted from such participation. (*Id.* at ¶ 542). These allegations are sufficient to state a claim for relief under § 1589(b) and show each of the three elements. *See Khatskevich*, 2025 WL 833872, at *10; *Mueller*, 2026 WL 2220472, at *4-5.

3. IBC Defendant

IBC Defendant takes issue with the participation, benefit, and knowledge elements of Plaintiffs' § 1589(b) claim as pressed against them. (IBC Def. Br. at 6-10). Plaintiffs respond, pointing to allegations in the SAC that speak to both participation by IBC Defendant or representatives, as well as the requisite benefit, and knowledge/reckless disregard elements. (Pl. Br. at 29-33). The Court agrees and finds that Plaintiffs have sufficiently pled a beneficiary liability claim as against IBC Defendant.

a. Participation

First, Plaintiffs' allegations demonstrate IBC Defendant's "participation in a venture." As recently held by the Second Circuit in *Mueller*, because the TVPRA does not define "participation in a venture," for purposes of the sections at issue here, 1595(a) and 1589(b), the plain language of the definitions must be used, contrary to the criminal trafficking statute, which does in fact include a definition that applies "only in that section." 2026 WL 2220472, at *4. Therefore, the question is not whether the alleged beneficiary engaged in active participation in a "forced labor venture," as IBC Defendant presses the Court to entertain (IBC Def. Br. at 5-6; IBC Reply at 4-5), but, as the Second Circuit has clarified, whether the "defendant took part in an enterprise or

undertaking that involved elements of risk, potential gain, or both." *Mueller*, 2026 WL 2220472, at *4. Accordingly, in order to determine whether IBC Defendant sufficiently "participated in a venture," the Court is guided by the following factors: "whether the defendant owned an interest in the venture; whether the defendant acted with the purpose or desire to promote the venture's success; whether the defendant and the venture otherwise acted with a common purpose; whether the defendant maintained a continuous relationship with the venture; whether the defendant exercised control over the venture's operations; and whether the defendant's association with the venture went beyond a mere arm's-length transaction." *Id.* at *5.

Here, the factors detailed above, taken together, skew towards the finding that IBC Defendant certainly "participated in a venture" sufficient to survive at this stage. While it is not clear whether IBC Defendant "owned an interest in the venture," the other factors lean in favor of participation. As an initial matter, the allegations in this case concerning beneficiary liability fall closer to those in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405-408 (S.D.N.Y. 2023),[7] cited by both parties, than those in *Mueller*. For example, in *Mueller*, the Circuit found that allegations that Deutsche Bank "provided bank accounts to individuals associated with [perpetrators of the scheme][,] the proceeds of the schemes flowed through these accounts," and "Deutsche Bank . . . prepared unspecified documentation and processed transactions that enabled the scheme," were insufficient and established "little more than an arm's-length business relationship between a bank and its customers." 2026 WL 2220472, at *5. The Circuit clarified that there was "no indication that Deutsche Bank acquired a financial interest in the schemes, that

[7] The Court in *Doe 1*, analyzed this issue and determined that even if the standard were akin to the criminal trafficking liability definition, *i.e.*, requiring the more stringent "active" participation in the violative venture, plaintiffs' allegations were sufficient to survive at the motion to dismiss stage. 671 F. Supp. 3d at 405-406. Similarly, here, even if the more stringent standard applied, Plaintiffs would still state a claim, as IBC Defendant also "went well beyond merely providing their usual services," in conducting their relationship with Shen Yun, as detailed *infra*. *Id.*

Deutsche Bank exercised operational control over the schemes, that Deutsche Bank provided specialized services to individuals involved in the schemes, or that Deutsche Bank and the fraudsters acted with a common purpose." *Id.* However, in *Doe 1*, the court held that "both JP Morgan and Deutsche Bank went well beyond merely providing their usual services," where the allegations were that JP Morgan "assisted with 'structuring' cash withdrawals so that those withdrawals would not appear suspicious," delayed in filing suspicious activity reports, and that Deutsche Bank, among other examples, allowed non-party Jeffrey Epstein to "use its accounts to send dozens of wires, directly and indirectly, including at least 18 wires in the amount of $10,000 or more to then known co-conspirators," and that certain transactions were "unusual." 671 F. Supp. 3d at 405-406. Here, Plaintiffs' allegations are sufficient to show that the relationship between IBC Defendant and Shen Yun Defendants was certainly "unusual," and, unlike in *Mueller*, IBC Defendant did much more than simply "provid[e] financial services at arm's length" in conducting their relationship with Shen Yun. 2026 WL 2220472, at *6.

Instead, Plaintiffs' allegations show that IBC Defendant provided "specialized services," "acted with a common purpose," and "exercised operational control." 2026 WL 2220472, at *5. Plaintiffs allege that: while IBC Defendant is "generally based in Chicago . . . with only six branches," only one "bespoke branch outside of Illinois" exists, located 15 minutes from Dragon Springs, "to service the Shen Yun Defendants and their members" (*see* SAC ¶¶ 253-254); "the Bank's representatives brought duffle bags of cash into the Dragon Springs compound for the students to make 'withdrawals' from their accounts" (*id.* ¶ 26); "[t]he Bank knew (or should have known) that hundreds of Performers opened accounts and shared the same custodian . . . the same address . . . and the same employment," constituting a "red flag" for human trafficking (*id.* ¶ 270); and "[t]he Bank was founded in 1992, and the Bank's founders, Maria Yu Tai and her husband,

Warren Tai, are both Falun Gong practitioners who view Hongzhi Li as having considerable authority and power," play a "significant role inside the Bank," and have a "close, personal relationship with Hongzhi Li and Rui Li" (*id.* ¶¶ 277-279). Further, Plaintiffs allege that this close relationship between Shen Yun Defendants and IBC Defendant has continued since at least 2011, when "Shen Yun Defendants required that every new Performer who joins Shen Yun open an account with" IBC Defendant (*id.* ¶ 224), lending additional credence to the requisite "continuous relationship with the venture." *Mueller*, 2026 WL 2220472, at *5.

Considering all of the above, and taking the factual allegations as true as is required at this stage, Plaintiffs have sufficiently pled "participation in a venture," sufficient to establish a beneficiary liability claim under 18 U.S.C. § 1589(b) as to IBC Defendant.

b. Benefit

Similarly, Plaintiffs have sufficiently alleged that IBC Defendant "knowingly benefitted" and was on notice of the forced labor violations. *Khatskevich*, 2025 WL 833872, at *10. Plaintiffs allege that IBC Defendant "facilitated and benefitted from the Shen Yun Defendants' commercial performing arts venture," and "ignored clear signs of forced labor . . . in favor of associating with Shen Yun and the network of lucrative businesses associated with the Shen Yun Defendants." (SAC ¶ 246). Plaintiffs further allege that IBC Defendant "facilitate[ed] the Shen Yun Defendants' venture by providing an imprimatur of legitimacy while turning a blind eye to the red flags of unlawful activity," and received in return "an exclusive pipeline of accounts from the Performers . . . [,] obtained a competitive edge with the lucrative network of businesses associated with the Shen Yun Defendants . . . [and] obtained banking business from the Shen Yun Defendants themselves." (*Id.* ¶¶ 266-267).

IBC Defendant urges the Court to apply a "causal relationship" standard to this factor, that in effect, requires Plaintiffs to show a "causal relationship between IBC's alleged 'facilitation' of forced labor and the benefits that IBC allegedly received." (IBC Def. Br. at 8 (citing *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 159 (S.D.N.Y. 2019)). While it is not clear whether this element should be construed in this manner, or whether, as Plaintiffs urge, all that is required to sufficiently state a "benefit," is simply to meet the statutory requirement under 18 U.S.C. § 1595(a) and benefit either "financially or by receiving anything of value" (Pl. Br. at 31), Plaintiffs allegations are sufficient, at this stage, to withstand either standard. *See Doe 1*, 671 F. Supp. 3d at 408 (declining to hold that the "causal relationship" standard applied, but holding that allegations that "JP Morgan chose to ignore warnings that Epstein was involved in sex-trafficking because JP Morgan understood that it would lose a lot of money if it fired Epstein as a client," were sufficient to show such a relationship, assuming *arguendo*, it did apply).

IBC Defendant's citations to *Levin v. Sarah Lawrence College*, 747 F. Supp. 3d 645 (S.D.N.Y. 2024), and its associated argument, are not persuasive. (IBC Def. Br. at 8). There, the Court held that "tuition payments and housing fees" did not bear "any relationship to the alleged sex and labor trafficking venture," and thus failed to show a knowing benefit as, in part, no allegations existed that the defendant college "would not have received those payments in the absence of the alleged sex or labor trafficking." *Id.* at 679-680. Here, on the other hand, Plaintiffs' allegations, at least at this stage and taken as true, do show such a connection: but for IBC Defendant "turning a blind eye to the red flags of unlawful activity" and thus continuing to retain the close, decades-long relationship with Shen Yun Defendant, IBC Defendant would not have been able to receive such "an exclusive pipeline of accounts from the Performers" or "obtained a

competitive edge with the lucrative network of businesses associated with the Shen Yun Defendants." (SAC ¶¶ 246, 266-267).

Thus, Plaintiffs' allegations square more closely to *Doe 1* or *Khatskevich* than *Levin*, and are sufficient to satisfy the benefit element. *Compare Doe 1*, 671 F. Supp. 3d at 408, *and Khatskevich*, 2025 WL 833872, at *11, *with Levin*, 747 F. Supp. 3d at 679-80.

c. Knowledge

Finally, Plaintiffs have sufficiently alleged that IBC Defendant "knew or should have known" of the alleged forced labor of which Shen Yun Defendants were engaged. *Khatskevich*, 2025 WL 833872, at *10. As detailed above, "[t]he Bank knew (or should have known) that hundreds of Performers opened accounts and shared the same custodian . . . the same address . . . and the same employment," constituting a "red flag" for human trafficking (SAC ¶ 270), and IBC Defendant, "in compliance with the Shen Yun Defendants' directives . . . multiple times each year for more than a decade . . . sent a team of its representatives into Dragon Springs to sign up the new Shen Yun recruits for accounts at the Bank" (*id.* ¶ 256). One such representative, Lina Wu, "frequently traveled to Dragon Springs," and "also worked in the hairdressing and costume departments, performing additional work for the benefit and success of the Shen Yun Defendants' performing arts venture." (*Id.* ¶¶ 257-258). Finally, as the sole bank for the Shen Yun Defendants Peformers, Plaintiffs allege that IBC Defendant "knew (or should have known) that no student Performer was paid more than $1,000 per month," "could not travel on their own . . . [or] leave the compound," and "from its observation of these trafficking and forced labor red flags across hundreds of Performers opening accounts at the Bank over more than ten (10) years," that the "Shen Yun Defendants' venture involved trafficking and forced labor." (*Id.* ¶¶ 270, 274). These allegations are plausible, at this stage, to show that IBC Defendant "knew of, or [at the very least]

recklessly disregarded" the venture engaged in by the Shen Yun Defendants. *See Doe 1*, 671 F. Supp. 3d at 408; *Khatskevich*, 2025 WL 833872, at *11.

Accordingly, as each element is met, Plaintiffs' allegations as against IBC Defendant for their claim for beneficiary liability survives IBC Defendant's motion to dismiss.

iii. Conspiracy and Attempt (Claims IV and V)

Plaintiffs allege a conspiracy claim against all Defendants (SAC ¶¶ 552-558) and an attempt claim against Shen Yun Defendants only (*id.* ¶¶ 559-563). SYZ Defendants argue that Plaintiffs' claims should be dismissed as the alleged version of the TVPRA in effect at the time of the violations did not provide for such a conspiracy or attempt claim, and the current version of the TVPRA is silent on retroactivity. (SYZ Def. Br. at 20).[8] IBC Defendant argues that the conspiracy claim as pled against it fails on the merits. (IBC Def. Br. at 11).

1. Shen Yun Defendants

SYZ Defendants make the same argument here as in *Sun*, 2026 WL 1382896 at *18-19—namely, SYZ Defendants argue that the Court should follow a Ninth Circuit case, *Ratha v. Patthana Seafood Co.*, 35 F.4th 1159, 1175-76 (9th Cir. 2022), and dismiss the conspiracy and attempt claims as pled against SYZ Defendants, because the current version of the TVPRA may not be applied retroactively. (SYZ Def. Br. at 20). However, the Court declines to do so and points out, as did Judge Clarke, that the Ninth Circuit revisited their opinion and determined *en banc* that the statute at issue does in fact apply retroactively. *See Sun*, 2026 WL 1382896, at *18-19 (citing *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 549-59 (9th Cir. 2026) (en banc)).

[8] While SYZ Defendants make specific arguments as to why Zhang's beneficiary liability claims should be dismissed, they make no specific arguments concerning the conspiracy claim as pled against Zhang. (*See* SYZ Def. Br. at 25; SYZ Def. Reply at 10-11). Accordingly, Plaintiffs' conspiracy claim (Claim IV) as pled against Zhang remains.

Applying the Ninth Circuit's analysis, the Court declines to dismiss Plaintiffs' attempt and conspiracy claims as pled against SYZ Defendants on retroactivity grounds. Though SYZ Defendants do move in the alternative to dismiss the conspiracy claim on the merits, Plaintiffs' allegations as against them indicate more than "parallel conduct," and instead "allege facts that plausibly show that the defendants entered into a joint enterprise with consciousness of its general nature and extent." *See Khatskevich*, 2025 WL 833872, at *12; *see also Sun*, 2026 WL 1382896, at *18-19; *see also supra* at 17-28 (indicating that Plaintiffs plausibly pled TVPRA allegations as to forced labor, trafficking, and beneficiary liability).

Plaintiffs' attempt and conspiracy claims as pled against SYZ Defendants, therefore, will proceed to discovery.

2. <u>IBC Defendant</u>

The Court does, however, dismiss Plaintiffs' conspiracy claim as pled against IBC Defendant. As IBC Defendant notes, Plaintiffs must plead more than mere "nonconclusory factual allegations that IBC entered an agreement with the Shen Yun Defendants" to support a claim for conspiracy pursuant to 18 U.S.C. § 1594(b), as there "must be an agreement to violate the prohibition on forced labor." *See Khatskevich*, 2025 WL 833872, at *12; *see also Doe 1*, 671 F. Supp. 3d 387, 412.

As to the existence of a conspiracy between IBC Defendant and SYZ Defendants, Plaintiffs allege only that IBC Defendant's "financial interconnectedness with the performing arts venture's use of forced child labor . . . constitutes its participation in that conspiracy." (SAC ¶ 555). Plaintiffs bolster that generalization describing IBC Defendant's conduct as a near exclusive provider of banking services (SAC ¶ 224), its sending of IBC Defendant's representatives inside Dragon Springs (SAC ¶¶ 256-257), its refusal to report suspicious activities (SAC ¶¶ 270-271), and its

personal relationships with the other Defendants (SAC ¶¶ 278, 280-284). Even at the motion to dismiss stage, however, these allegations are insufficient to "plausibly show that the defendants entered into a joint enterprise with consciousness of its general nature and extent," even considering the Court's finding that Plaintiffs sufficiently alleged their beneficiary liability claim as to IBC Defendant. *See Doe 1*, 671 F. Supp. 3d 387, 412 (holding that despite the sufficient factual pleading concerning beneficiary liability, plaintiffs nevertheless failed to plead facts sufficient to support the inference that an actual agreement between the bank defendants and non-party Jeffrey Epstein to participate in a sex-trafficking venture was made).

Accordingly, Claim IV is dismissed as against IBC Defendant.

iv. Seizure of Documents (Claim VI)

SYZ Defendants argue that Plaintiffs fail to state a claim for seizure of documents in violation of the TVPRA, 18 U.S.C. § 1592 (a). (SYZ Def. Br. at 17-19). Civil liability is created under the TVPRA where someone "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person," while violating or intending to violate certain other sections of the TVPRA, including those concerning forced labor. 18 U.S.C. § 1592(a).

Here, despite SYZ Defendants' assertions otherwise, Plaintiffs plead exactly that: "Shen Yun Defendants confiscate Performers' passports and immigration documentation upon arrival at Dragon Springs" (SAC ¶ 15); "Hongzhi Li and his agents confiscate Performers' passports and immigration documentation and do not return them until Performers are terminated from Shen Yun" (i*d.* ¶ 161); "Shen Yun Defendants keep Performers' passports and immigration documents even while they are living at Dragon Springs," and "Plaintiff Chang was forced to hand over her

passport and immigration documentation . . . at the age of 13 . . . [and] generally did not have custody of her documents again until she left Shen Yun at age 24, except on [] rare occasion[s]" (*id.* ¶ 163; *see also* ¶¶ 387, 437, 475 (similar allegations as to Plaintiffs Wang, Xie, and Zhu)); and "Defendants took possession of Plaintiffs' and class members' passports and immigration paperwork so that they could not leave the country and would be forced to labor for Defendants" (*id.* ¶ 566). Plaintiffs' allegations are sufficient to state a claim for relief for seizure of documents under the TVPRA. *See, e.g., Sun*, 2026 WL 1382896, at *18 (denying defendants' motion under similar circumstances at the motion to dismiss stage).

Plaintiffs' claim under 18 U.S.C. § 1592 survives SYZ Defendants' motion to dismiss.

B. Plaintiffs' NYLL Claims for Relief (Claims VII-XII)

Plaintiffs press NYLL claims against Shen Yun Defendants only. (SAC at 110-113). Shen Yun Defendants argue: i) that the NYLL claims are inapplicable to the parties as pled; ii) that the statute of limitations bars Plaintiffs' NYLL claims; and iii) that the NYLL retaliation claim pressed by Plaintiff Chang (Claim XII) fails on the merits. (SYZ Def. Br. at 21-24). The Court analyzes each argument *seriatim*.

i. Applicability of the NYLL

Shen Yun Defendants argue that under the NYLL, Plaintiffs cannot be "employees," as they are "students," or in the alternative, "member[s] of a religious order," and therefore outside the purview of the NYLL, specifically §§ 651(5)(h) ("students" working for a "religious, educational, or charitable institution") and 651(5)(f) (an individual working as "a member of a religious order"). (SYZ Def. Br. at 21-23).

As an initial matter, the administrative exemptions to the NYLL under § 651 are categorized as affirmative defenses. *Smith v. Lyle*, No. 24-CV-02767, 2025 WL 1684790, at *6

(S.D.N.Y. June 16, 2025). As with any affirmative defense, a court may only dismiss based upon such exemptions if it is "unequivocally" clear from the face of the complaint. *See Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-00588, 2012 WL 1638326, at *4 (S.D.N.Y. May 8, 2012).

Here, Shen Yun Defendants have failed to carry their burden of proof to show that any of the NYLL § 651 exemptions apply to this matter, as they are simply not "unequivocally" clear from the face of the SAC, and Shen Yun Defendants have failed to sufficiently point to "particularized" facts in the SAC to support their arguments. *See Gjoni v. Orsid Realty Corp.*, No. 14-CV-08982, 2015 WL 4557037, at *7 (S.D.N.Y. July 22, 2015) (declining to dismiss Plaintiff's NYLL overtime claim based on the NYCRR's "janitorial exemption," holding that the "exemption [was] not obvious based on the allegations in [the] complaint," and "Defendants fail[e]d to show any facts particularized to Plaintiff that his job as a building superintendent fell within the janitorial exemption"). Plaintiffs allege at various points throughout the SAC that they were: i) "employees" within the "meaning of the New York Labor Law"; ii) "Performers" forced to perpetuate Shen Yun's "forced labor scheme: performing uncompensated labor as Performers in Shen Yun performances, so that Defendants my reap massive financial benefits"; or iii) "students" that transition quickly to "Performers." (*See* SAC ¶¶ 9, 91, 121, 590). The NYLL exemptions Defendants invoke require the Court to engage in a factual analysis as to both the nature of the Plaintiffs' roles and the Shen Yun Defendants' religious and/or charitable status, which the Court declines to do in this procedural posture. *See Kilkenny*, 2012 WL 1638326, at *4 (citing *Beaulieu v. Vermont*, No. 10-CV-00032, 2010 WL 3632460, at *5-6 (D.Vt. Aug. 5, 2010) (noting that exemption categories delineated by statute are "affirmative defenses to be fleshed out during the discovery process")).

Accordingly, the Court declines to dismiss Plaintiffs' NYLL claims on either of Shen Yun Defendants' stated exemption grounds.

ii. Statute of Limitations

Shen Yun Defendants next argue that even if the NYLL did apply to Plaintiffs, a majority of their claims would be time-barred (Claims VII-XI). (SYZ Def. Br. at 23-24). The Court disagrees, except for the NYLL claims asserted by Plaintiff Wang.

The Parties do not dispute the applicable six-year statute of limitations for NYLL claims. (SYZ Def. Br. at 23; Pl. Br. at 16). Although the statute of limitations is ordinarily asserted as an affirmative defense, the Second Circuit permits such defense to be raised on a Rule 12(b)(6) motion provided "the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *DiBenedetto v. Coley*, No. 22-CV-05926, 2024 WL 1216703, at *4 (S.D.N.Y. Mar. 21, 2024) (granting a motion to dismiss and dismissing claims as time-barred).

Only Plaintiff Wang's NYLL claims will be dismissed on statute of limitations grounds at this juncture. Plaintiffs do not respond to Shen Yun Defendants' arguments concerning Plaintiff Wang and therefore concede that Plaintiff Wang did not perform with Shen Yun after 2017. (*See* Pl. Br. at 16). The allegations in the Second Amended Complaint make clear that Plaintiff Wang left Shen Yun in 2017. (SAC ¶¶ 424-428). Plaintiff Wang was not added as a plaintiff in this action until April 30, 2025, upon the filing of the Second Amended Complaint. (*See* Doc. 68). Accordingly, as Plaintiff Wang has not alleged any conduct after April 30, 2019—six years prior to the filing of the Second Amended Complaint (*see* Def. Br. at 23)—Plaintiff Wang's NYLL claims are dismissed.[9]

---

[9] Even assuming *arguendo*, that Plaintiffs' "relation back" argument applies (Pl. Br. at 16), Plaintiff Wang's claims are still time barred. The original complaint was filed on November 25, 2024, requiring conduct post-dating November 25, 2018 to fall within the six-year statute of limitations period.

However, as to the remaining Plaintiffs, including Xie, Chang, and Zhu, Plaintiffs have sufficiently pled allegations within the respective limitations periods for the NYLL claims for relief; and to the extent that Plaintiffs have pled allegations outside of the statute of limitations, it is well-established that the Court may consider those allegations as background and context for actionable allegations. *See Tenemille v. Town of Ramapo*, No. 18-CV-00724, 2020 WL 5731964, at *8 (S.D.N.Y. Sept. 24, 2020); *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 13-CV-01594, 2016 WL 1466545, at *14 (N.D.N.Y. Apr. 14, 2016); *Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *11 (S.D.N.Y. Feb. 26, 2009).[10]

Accordingly, Shen Yun Defendants' motion to dismiss Plaintiffs' NYLL claims for relief on statute of limitations grounds is granted only as to Plaintiff Wang and otherwise denied.

iii. <u>Plaintiff Chang's NYLL § 215 Retaliation Claim (Claim XII)</u>

Shen Yun Defendants argue that Plaintiffs' NYLL § 215 Retaliation Claim (Claim XII) fails as pled, as Plaintiff Chang failed to demonstrate that the lawsuits filed against her were done with a "retaliatory motive," or "without a reasonable basis in fact or law." (SYZ Def. Br. at 24-25). The Court disagrees.

To state a claim under NYLL § 215(a)(3), a plaintiff must make a *prima facie* showing of "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the

[10] The Court need not reach Plaintiffs' "relation back" argument as to Plaintiffs Xie, Chang, and Zhu at this time, as Plaintiffs sufficiently include allegations within the disputed time period, and any allegations outside may be included as background, as detailed *supra*. Similarly, Shen Yun Defendants' argument concerning the extraterritoriality of the NYLL (SYZ Def. Br. at 24) is of no moment, as Plaintiffs have alleged conduct that did take place in New York proper. The Court declines to parse any additional conduct that may have taken place outside of New York at this procedural stage. *See Garcia v. ROC Nation LLC*, No. 24-CV-07587, 2025 WL 1865965, at *17 (S.D.N.Y. July 2, 2025) (declining to conduct the choice-of-law question extraterritoriality of the NYLL may invoke, where plaintiff adequately alleged that he "worked in New York consistently").

adverse employment action." *DeLorenzo v. Coffey*, No. 24-CV-01735, 2025 WL 753951, at *6 (S.D.N.Y. Mar. 10, 2025) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).

Taking Plaintiffs' allegations as true, Plaintiff Chang (1) engaged in protected activity when she "filed the instant lawsuit alleging violations of the New York Labor Law" and was quoted publicly by the New York Times (SAC ¶¶ 301, 309, 591), (2) has been disadvantaged through SYZ Defendants "defaming her on the news, on social medial, during mass criticism sessions at Dragon Springs, and by directing the filing of two meritless lawsuits against her in Taiwan" (Pl. Br. at 17; *see also* SAC ¶¶ 376-381, 592), and (3) claims that a causal connection exists between such protected activity and the retaliation by SYZ Defendants (*see* SAC ¶¶ 593, 595, 380-381).

Despite Shen Yun Defendants' assertions otherwise (SYZ Def. Br. at 24-25), the above allegations, taken as true for the purposes of the motion to dismiss, are sufficient at this stage to state a *prima facie* claim for relief under NYLL § 215(a)(3). *See Farmer v. Dr. Lucia Patino, Optometrist, P.C.*, No. 18-CV-01435, 2019 WL 110956, at *3-4 (E.D.N.Y. Jan. 4, 2019).

Shen Yun Defendants' motion to dismiss is thus denied as to Plaintiff Chang's retaliation claim.

## CONCLUSION

For the reasons outlined above, SYZ Defendants' motion to dismiss is GRANTED in part and DENIED in part, and IBC Defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, as to SYZ Defendants' motion, the NYLL claims (Claims VII-XI), as pled by Plaintiff Wang only, are dismissed; and Plaintiffs' requests for declaratory and prospective injunctive relief in the TVPRA claims and in the wherefore clause are dismissed. SYZ Defendants' motion to dismiss is otherwise DENIED. As to IBC Defendant's motion, the conspiracy claim

(Claim IV) is dismissed, while IBC Defendant's motion to dismiss is DENIED as to the beneficiary liability claim (Claim II).

Because the Court finds oral argument unnecessary, the parties' respective letter motions for oral argument (Docs. 102, 103) are DENIED as moot.

Defendants are directed to file Answers to the SAC within 14 days of the issuance of this Opinion & Order. The Clerk of the Court is respectfully directed to: (1) terminate the motion sequences pending at Docs. 100 and 101; and (2) terminate the letter motions pending at Docs. 102 and 103.

**SO ORDERED:**

Dated: White Plains, New York
August 18, 2026

PHILIP M. HALPERN
United States District Judge